No. 70,125

STATE OF KANSAS, *Appellee*, v. FLOYD A. DOTSON, *Appellant*.
(886 P.2d 356)

Opinion filed December 9, 1994.

*Debra J. Wilson*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*W. Scott Toth*, assistant district attorney, argued the cause, and *Paul J. Morrison*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

McFarland, J.: Floyd A. Dotson appeals his jury trial convictions of three counts of indecent liberties with a child (K.S.A. 1991 Supp. 21-3503) and five counts of aggravated criminal sodomy (K.S.A. 21-3506).

Before summarizing the sordid facts herein, a brief statement as to how we identify the victims and their families is appropriate. There are four boy victims herein and two sets of parents. Thus, we have eight people to whom we would ordinarily refer to by their initials. With such numbers involved, the use of initials would be too confusing. We will, therefore, refer to each person by a fictitious name which begins with the first letter of the actual name.

The series of events commenced in Kansas City, Missouri, where the Johnson family resided. The family unit, for our purposes, consisted of Mr. and Mrs. Johnson, Brett (age 16), Mitchell (age 11), and Arthur (age 9). Brett and Mitchell are the stepsons of Mr. Johnson. Arthur is the couple's son. The ages of the children are given as of the trial date herein. They were approximately a year younger at the time of the occurrences giving rise to the charges. Defendant was the manager and a resident of an apartment complex located across the street from the Johnson home. Defendant was in his early 20's and had no family. Over a period of time, defendant and all members of the Johnson family became good friends. Mr. and Mrs. Johnson accepted defendant virtually as an elder son. Defendant took the boys to various recreational activities and was a frequent guest in their home where he assisted, as a friend, in home maintenance. In July of 1990, the Johnson family moved to Johnson County.

The relationship between defendant and the Johnson family continued, despite the distance that separated them. Mr. Johnson was engaged in some extensive home remodeling and defendant would assist him. Defendant would frequently stay overnight in the Johnson home—sometimes three or four nights during the same week.

The Johnsons also became friends with the Armstrongs, who were the Johnsons' neighbors after the move. Residing in the

Armstrong home was Joseph, Mr. Armstrong's 10-year-old stepson. Joseph and Mitchell were classmates and good friends. The Armstrongs became acquainted with defendant through the Johnsons. Mr. Armstrong had a paper route and from time to time defendant would help him with that route and also assist with household chores. On several occasions, defendant would spend the night at the Armstrong residence. Defendant would take the four boys individually and in groups to recreational activities and bought them presents. Defendant also hired the boys to do odd jobs for him.

In late August of 1991, Mrs. Armstrong became concerned over behavioral changes she had observed in Joseph. He exhibited uncharacteristic fits of anger and, at times, appeared to be distancing himself from the family. She had a conversation with the child, seeking to learn what was wrong. Joseph stated that defendant had touched Joseph's private parts. Mrs. Armstrong did not want to press the subject at that time, but talked the matter over with her husband after Joseph left for school. The Armstrongs agreed that the wife should get more details from Joseph, which she did later that same day.

The Armstrongs then confronted defendant with what Joseph had said. Defendant admitted to the touching, and said he had a problem, had received psychological counseling for it, and was trying to control his behavior. Defendant asked for the Armstrongs' help. The matter was left at that and in a few days, defendant was to come to the Armstrong home and tell Joseph how wrong defendant's conduct had been. Meanwhile, Mrs. Armstrong had an additional conversation with Joseph. She learned that more sexual activity than touching had occurred and that the same thing had occurred between defendant and Mitchell. Mrs. Armstrong testified that she and her husband confronted defendant with this additional information and that defendant admitted to engaging in sodomy with Mitchell. The Armstrongs told defendant he would have to advise the Johnsons of what had occurred and that he was not to go to the Johnson home. A few days later, Mrs. Armstrong observed defendant's truck parked at the Johnson residence. Mr. Armstrong then telephoned Mr. John-

son about the situation. Mr. Johnson contacted defendant, who stated only that he and Mitchell had played "grab butt," the same term Mitchell had used to describe defendant's activities with him when questioned by Mr. Johnson.

The police department was notified and an investigation ensued. Defendant was ultimately charged with and convicted of eight sexual felonies—three involving Mitchell, one with Arthur, two with Brett, and two with Joseph.

## DENIAL OF RIGHT TO PRESENT
## A COMPLETE DEFENSE

For his first issue, defendant contends that he was denied his right to present a "complete defense" to the charges herein. Specifically, he argues that "[t]he framing of the pleadings in general terms and the vague nature of the evidence adduced deprived the defendant of a possible defense in this case, that the charges were multiplicitous." This is a unique multiplicity argument.

In *State v. Cathey*, 241 Kan. 715, 718-19, 741 P.2d 738 (1987), we held:

"Multiplicity is the charging of two or more counts in a complaint where only a single criminal act is involved. *State v. Garnes*, 229 Kan. 368, 372, 624 P.2d 448 (1981); *State v. Dorsey*, 224 Kan. 152, 578 P.2d 261 (1978). K.S.A. 1986 Supp. 21-3107(1) allows charging an individual with multiple violations arising from a single transaction when the same conduct may establish the commission of more than one crime.

"The principles for determining whether charges are multiplicitous are: (1) A single offense may not be divided into separate parts; generally, a single wrongful act may not furnish the basis for more than one criminal prosecution. (2) If each offense charged requires proof of a fact not required in proving the other, the offenses do not merge. (3) Where offenses are committed separately and severally, at different times and at different places, they cannot be said to arise out of a single wrongful act."

In this issue, we must examine the charges and evidence relative to the three victims (Mitchell, Brett, and Joseph) wherein multiple charges were involved.

In count one, defendant was charged with indecent liberties (lewd fondling or touching) against Mitchell. The act was alleged to have occurred between August 20, 1990, and September 10, 1991. Counts two and three allege, in identical language, that

defendant sodomized Mitchell. The dates of the offenses were the same time span as count one.

At trial, Mitchell testified how defendant would come into his bedroom at night, wake him up, and take him to the family room (his brothers slept in the same bedroom as Mitchell). In the family room, defendant would have the boy strip. Defendant would "play" with the boy's penis and have the boy do the same to him. The boy then described engaging in oral and anal sodomy with defendant. Sometimes defendant would take the passive role in these acts and sometimes the active role. He testified these acts occurred "a lot," commencing before the family moved to Kansas. On cross-examination, Mitchell's preliminary hearing testimony was introduced where the boy had estimated these acts had occurred 200 times.

As noted, the form the testimony took was specific as to the wide variety of sexual acts occurring between defendant and Mitchell followed by a statement the same conduct occurred on "a lot" of other occasions. No identifiable specific incidents are stated. That is, the incidents all occurred in the same area of the Johnson home at night while the rest of the household slept. Thus, we do not have testimony about a garage incident, a camping trip incident, or the like. Mitchell essentially stated the same type of conduct occurred on many occasions, without further elaboration. This does not render the acts committed on the other occasions any less criminal.

Mrs. Armstrong testified defendant admitted to her that he had engaged in oral sodomy with Mitchell (both in the passive and active role). Also in evidence was defendant's admission to police officers upon arrest that penis fondling had occurred between himself and Mitchell. Defendant maintained Mitchell was the instigator of that activity.

The instructions herein followed the form of the complaints as to elements. Thus, the instructions for each of the two sodomy counts were identical with each other. No concern was raised at trial with the form of the counts in the complaint or objection made to the instructions. The same are not complained of before us. Possible multiplicity was not raised before the trial court.

The two aggravated criminal sodomy charges involving Brett were identical with the time span being stated as May 1 to July 12, 1991 (the day before Brett turned 16). The instructions on the two charges were identical. Brett testified that defendant would wake him up and then engage in oral and anal sodomy with him. He further testified that in the few weeks prior to his birthday, these incidents occurred two or three times a week.

The two charges involving Joseph were indecent liberties with a child and aggravated criminal sodomy. The time span was July 1 to September 10, 1991. Joseph described how defendant would wake him up, kiss him, fondle his penis, and perform oral sodomy on him. He testified there were four or five such incidents, each one occurring at night in his home.

The defense theory was stated during closing arguments. Defendant admitted to the charges in count one (indecent liberties involving Mitchell), which were the subject of defendant's confession to the police officers. As to the other charges, counsel urged the jury to find the testimony of Mitchell, Brett, Joseph, Arthur, Mr. Johnson, and Mrs. Armstrong was not credible.

On appeal, defendant's contention is that by virtue of the form of the complaints and the evidence, the jury possibly could have found all charges relating to the particular child could have occurred the same night. If the jury did this, defendant argues, such charges would be multiplicitous under *State v. Dorsey*, 224 Kan. 152, 578 P.2d 261 (1978). In *Dorsey*, defendant was convicted of three counts of attempted rape and two counts of aggravated criminal sodomy. One victim was involved and all counts arose within a one hour time span and in the same location. In a four to three decision, the majority found multiplicity and reversed two of the attempted rape convictions and one aggravated criminal sodomy conviction.

Multiplicity is the charging of two or more counts in a complaint where only a single criminal act is involved. *State v. Cathey*, 241 Kan. at 718. There is no claim herein the complaints contain any multiplicitous counts. Further, Mitchell, Brett and Joseph described the various acts of sodomy and/or indecent liberties performed on them and testified the same acts were committed

against them on multiple other occasions. It is just speculation on defendant's part that the jury possibly could have believed the boys' testimony that the described sexual acts occurred, but disbelieved their testimony that such acts occurred on more than one occasion. Another problem with defendant's position is that an act of oral sodomy and an act of anal sodomy do not constitute a single criminal act. See *State v. Howard*, 243 Kan. 699, 763 P.2d 607 (1988). We find no merit in defendant's claim that he was denied his right to raise a possible defense of "multiplicity" by virtue of the form of both the complaints and the evidence.

## OTHER CRIMES EVIDENCE

For this next issue, defendant contends the trial court erred in admitting evidence of a prior crime under K.S.A. 60-455.

Appellate review of the admission of prior crimes evidence under K.S.A. 60-455 is limited to whether the trial court abused its discretion or whether the trial court admitted clearly irrelevant evidence. *State v. Synoracki*, 253 Kan. 59, 72, 853 P.2d 24 (1993); *State v. Clements*, 252 Kan. 86, Syl. ¶ 2, 843 P.2d 679 (1992); *State v. Blackmore*, 249 Kan. 668, Syl. ¶ 2, 822 P.2d 49 (1991).

Over defendant's objection, evidence was admitted that in 1987 defendant had confessed to and pled guilty to a sodomy charge in Jackson County, Missouri. The victim reported he had been orally and anally sodomized and fondled by defendant during a two-year period when the victim was age 13 to 15. The circumstances of the incident were similar to those involving the four victims herein.

K.S.A. 60-455 provides:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

In ruling upon the admissibility of evidence of a prior crime or civil wrong under K.S.A. 60-455, the trial court must: (1) determine it is relevant to prove one of the facts specified in the

statute; (2) determine the fact is a disputed, material fact; and (3) balance the probative value of the prior crime or civil wrong evidence against its tendency to prejudice the jury. *State v. Synoracki*, 253 Kan. at 72; *State v. Grissom*, 251 Kan. 851, Syl. ¶ 28, 840 P.2d 1142 (1992); *State v. Blackmore*, 249 Kan. 668, Syl. ¶ 3.

Evidence of the prior crime herein was admitted for the limited purpose of proving intent on the three indecent liberties with a child counts. The jury was so instructed. The trial court's ruling was based on the fact that indecent liberties with a child is a specific intent crime whereas aggravated sodomy is not.

In *State v. Synoracki*, 253 Kan. 59, Syl. ¶ 12, we held:

"The crucial distinction in admitting other crimes evidence under K.S.A. 60-455 on the issue of intent is not whether the crime is a specific or general intent crime but whether the defendant has claimed that his or her acts were innocent."

In the case before us, defendant admitted to police officers facts sufficient to support his conviction of indecent liberties with Mitchell (as acknowledged by his counsel in closing argument). Defendant presented no testimony on his own behalf. There is no evidence of "innocent" acts. The evidence of the circumstances surrounding the indecent liberties acts and the specified acts themselves leave no room for even an inference the acts may have been innocent acts lacking the requisite intent. This is not a situation as in *State v. Clements*, 252 Kan. 86, 843 P.2d 679 (1992), where there was an issue as to whether defendant's physical contact with the complaining witness was a therapeutic massage of a sore back or the criminal offense of sexual battery. Where criminal intent is obviously proved by the mere doing of the act, the introduction of other crimes evidence has no real probative value to prove intent. *State v. Nunn*, 244 Kan. 207, 768 P.2d 268 (1989).

We conclude that the evidence of the prior crime should not have been admitted to prove intent on the indecent liberties charges. However, in view of the strength of the evidence of guilt herein, we find no reversible error in this issue.

## SENTENCING

For his third issue, defendant contends the trial court did not

consider defendant's individual characteristics, circumstances, needs, and potentialities pursuant to K.S.A. 21-4601 or the sentencing factors set forth in K.S.A. 21-4606 and that the sentences must be vacated and the case remanded for a new sentencing proceeding.

On the five aggravated criminal sodomy convictions, defendant was sentenced to the maximum of 15 years to life. On the three indecent liberties with a child convictions, defendant was sentenced to the maximum of 5 years to 20 years. Four of the aggravated criminal sodomy sentences were to run consecutively. The balance of the sentences were run concurrently, giving a controlling sentence of 60 years to life. There is no claim the sentences imposed exceeded lawful limits or were otherwise illegal.

K.S.A. 21-4601 provides the fundamental framework for the sentencing of criminals:

"This article shall be liberally construed to the end that persons convicted of crime shall be dealt with in accordance with their individual characteristics, circumstances, needs, and potentialities as revealed by case studies; that dangerous offenders shall be correctively treated in custody for long terms as needed; and that other offenders shall be dealt with by probation, suspended sentence, fine or assignment to a community correctional services program whenever such disposition appears practicable and not detrimental to the needs of public safety and the welfare of the offender, or shall be committed for at least a minimum term within the limits provided by law."

K.S.A. 21-4606 lists factors for consideration by a sentencing court:

"(1) In sentencing a person to prison, the court, having regard to the nature and circumstances of the crime and the history, character and condition of the defendant, shall fix the lowest minimum term which, in the opinion of said court, is consistent with the public safety, the needs of the defendant, and the seriousness of the defendant's crime.

"(2) The following factors, while not controlling, shall be considered by the court in fixing the minimum term of imprisonment:

(a) The defendant's history of prior criminal activity;

(b) The extent of the harm caused by the defendant's criminal conduct;

(c) Whether the defendant intended that his criminal conduct would cause or threaten serious harm;

(d) The degree of the defendant's provocation;

(e) Whether there were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;

(f) Whether the victim of the defendant's criminal conduct induced or facilitated its commission;

(g) Whether the defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained."

In *State v. Richard*, 252 Kan. 872, 880-81, 850 P.2d 844 (1993), we stated:

"It is the sentencing judge alone who uses his or her discretion to determine the appropriate sentence or other disposition of the case. The sentencing judge determines the sentence by exercising his or her best judgment, common sense, and judicial discretion after considering all of the reports, the defendant's background, the facts of the case, the public safety, and the statutory guidelines for sentencing. *State v. McDonald*, 250 Kan. 73, 82, 824 P.2d 941 (1992).

. . . .

"The statutory factors which the judge shall take into consideration in determining the penalty to be imposed are enumerated in K.S.A. 21-4606. Where the sentence exceeds the minimum, the legislature intended that the sentencing judge place on the record a detailed statement of facts and factors the judge considered. Failure to do so does not always indicate the sentencing court abused its discretion. Each case is to be considered on its facts. See *State v. McDonald*, 250 Kan. at 82-83.

"Although the appellate courts have upheld sentences where the factors considered by the sentencing judge are not specifically enumerated, the appellate courts have repeatedly stated the better practice is for a trial judge to make a detailed record of the facts and factors considered in imposing sentence. See, *e.g., State v. Crispin*, 234 Kan. 104, 113, 671 P.2d 502 (1983). A sentencing court may be found to have substantially complied with K.S.A. 21-4606 when it incorporates into the record a presentence report which addresses the seven factors which must be considered pursuant to K.S.A. 21-4606(2). *State v. Webb*, 242 Kan. 519, Syl. ¶ 2[, 748 P.2d 875 (1988)]."

The trial court did not enumerate the sentencing factors set forth in K.S.A. 21-4606. The trial court stated, however, that it had considered the provisions of K.S.A. 21-4601 and -4606. The better practice would have been to include an enumerated statement of this consideration.

From the trial court's statements at sentencing, it is apparent that it was properly concerned over the fact that defendant had previously been convicted of a very similar offense, was on probation therefor at the time of the commission of the offenses herein, had received extensive counseling in connection therewith aimed at preventing subsequent like offenses, yet went right

ahead and committed the present offenses. Obviously, the offenses herein did not represent a single rash act or momentary loss of control. Defendant sought these young boys out time after time to gratify his sexual desires and violated them in their homes. He had gained access to their homes by gaining the trust of the entire families through prodigious efforts to do so on his part. The nature of the crimes, ages of the victims, and circumstances essentially rule out application of factors in K.S.A. 21-4606(2)(d), (e), (f), and (g)—provocation, excuse, victim inducement, and compensation to the victims. In sentencing defendant, the court stated, in part:

"I have had 30 years in this business as prosecutor, as defense counsel, and as a Judge, and I don't recall, quite frankly, in any case short of multiple murders, in which I have heard or written or—excuse me—or read in written form anything more drastic in terms of the impact of the crime on the victims.

"Now, during the course of trial, as you will well recall, a recurring theme was repeated over and over by the individual victims, by their parents. A situation in which you intentionally, and obviously by design, ingratiated yourself, first, with the child, and then with the parents, and in each instance established a basis of trust, a basis of affection. Children stated they loved you even now. Parents indicated that they trusted you implicitly. And to think that that type of love and affection still felt by some, and that degree of trust and confidence and faith would be totally betrayed, and that you would turn those children of those parents who trusted you implicitly into victims.

"And past history indicates that some of these children will recover from that unfortunate exposure and some will not. Some will be scarred for life by what you subjected them to involuntarily, and I cannot say to you emphatically enough, I just don't recall a case, as I say, that has had such a devastating impact on the victims."

The sentencing judge was also the trial judge, and, accordingly, heard the victims' testimony and observed them while they testified. The sentences imposed are lengthy. They are, however, within the statutory limits. As we stated in *State v. Arrington*, 251 Kan. 747, Syl. ¶ 6, 840 P.2d 477 (1992), a sentence imposed within the statutory guidelines will not be disturbed on appeal if it is within the trial court's discretion and not a result of partiality, prejudice, oppression, or corrupt motive.

In summary, although it would have been a better practice for the sentencing judge to enumerate on the record its specific con-

sideration of each of the sentencing factors set forth in K.S.A. 21-4606, the record reflects the court did consider the factors and, viewing the record of the sentencing in its entirety, we find no reversible error or abuse of discretion in the sentencing herein.

## FAILURE TO MODIFY

For his final issue, defendant contends the trial court failed to follow the mandate of K.S.A. 1990 Supp. 21-4603(4)(a), now codified at K.S.A. 1993 Supp. 21-4603(d)(1), which provides:

"Except when an appeal is taken and determined adversely to the defendant as provided in subsection (d)(2), at any time within 120 days after a sentence is imposed, after probation or assignment to a community correctional services program has been revoked, the court may modify such sentence, revocation of probation or assignment to a community correctional services program by directing that a less severe penalty be imposed in lieu of that originally adjudged within statutory limits and *shall modify such sentence if recommended by the Topeka correctional facility [-east] unless the court finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the inmate will not be served by such modification.*" (Emphasis supplied.)

Defendant argues that the recommendation of the Topeka Correctional Facility (TCF) triggered the statute. The TCF report concluded with the following:

"Based on the findings of the present evaluation, the team recommends:

Serve appropriate sentence

Comments:

Sentence modification should be considered."

In *State v. Bruce*, 255 Kan. 388, 398, 874 P.2d 1165 (1994), we reviewed the type of TCF recommendation necessary to trigger the mandatory aspect of the statute. We stated:

"K.S.A. 1992 Supp. 21-4603(4) requires a district court to modify a defendant's sentence upon an unequivocal recommendation by TCF, unless the court makes certain findings on the record. See *State v. Boomgaarn*, 249 Kan. 673, 822 P.2d 605 (1991); *State v. Moon*, 15 Kan. App. 2d 4, 801 P.2d 59 (1990), *rev. denied* 248 Kan. 998 (1991). 'Absent an unequivocal recommendation for modification by the [TCF], the court has discretion in modifying sentence and commits no error in refusing modification of sentence absent an abuse of that discretion.' *Moon*, 15 Kan. App. 2d at 10."

(Note: the form of the statute involved in *State v. Bruce* is identical in all pertinent respects to the current version cited herein except it is now K.S.A. 1993 Supp. 21-4603[d][1] rather than K.S.A. 1992 Supp. 21-4603[4].)

The recommendation in *Bruce* was that "defendant serve the appropriate sentence." 255 Kan. at 398.

We conclude the TCF report does not contain the unequivocal recommendation to modify required to trigger the mandatory provisions of K.S.A. 1993 Supp. 21-4603(d)(1).

The judgment is affirmed.