(65 P.3d 1078)
No. 87,604

STATE OF KANSAS, *Appellee*, v. SEAN DUSTIN DAVIDSON, *Appellant.*

Opinion filed April 4, 2003.

*Libby K. Snider,* assistant appellate defender, and *Randall L. Hodgkinson,* deputy appellate defender, for appellant.

*Andrew M. Delaney,* county attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before BEIER, P.J., ELLIOTT and GREEN, JJ.

BEIER, J.: Sean D. Davidson appeals his convictions of aggravated criminal sodomy and aggravated indecent liberties with a child. We reverse because of the erroneous admission of K.S.A. 60-455 evidence as well as a therapist's opinion on whether the victim was capable of lying.

Dorothy "Dollie" Woods is the mother of Dorsia "Dodie" Davidson and the grandmother of Dodie's children, B.W., J.W., and K.D. B.W. was adopted by and lived with Dollie and her husband, Darrin Woods. J.W. lived with Dodie and the defendant, who is J.W.'s stepfather and K.D.'s father.

When J.W. was 4 years old and on a visit to the Woods, he spontaneously put his toy cars in the front of his pants and started moving his hips back and forth. Dollie asked what he was doing, and he replied that he was "doing sex" he had learned from the defendant. J.W. told Dollie that the defendant had put his "pee pee in his butt butt" and in his mouth and had made him try to do the same thing to him while they were on a fishing trip. J.W. subsequently told Darrin about the same incidents.

J.W.'s story had some variance over time; he sometimes stated the incidents happened inside the car on the fishing trip, at other times, outside. J.W. showed Dollie and Darrin a location at a lake where the incidents occurred. He also said the defendant had pointed a knife at him and threatened to kill him.

While taking a bath, J.W. showed an aunt and Dollie how the defendant had tied him up with washcloths. He said the defendant

forced him to bend over and hurt him. A couple of times, when Dodie suggested that J.W. take a bath with his daddy, J.W. would scream "no no." On a few occasions J.W. was observed by Dollie, Darrin, and his aunt trying to insert toy hot dogs into his rectum, and he told Darrin that this was "what Sean did to me."

Dollie called a child abuse hotline and was advised to document everything and to contact the Kansas Department of Social and Rehabilitation Services (S.R.S.) and the sheriff. Dollie wrote a report based on J.W.'s statements. J.W. was interviewed within 2 weeks by Sheriff Mike Batchelder and social worker Lori Lopez. Although J.W. had difficulty remaining focused during this interview, he did state that the defendant did "bad things" to him and had "sex" with him in the front seat of the car when they went fishing.

Pediatrician Phyllis Roberts, M.D., examined J.W. approximately 2 weeks after the interview but found no external physical evidence of abuse. Because she nevertheless had suspicions of abuse because of Dollie's report, Roberts contacted the S.R.S. child abuse hotline and made a report, as she was required to do.

Kansas Bureau of Investigation (KBI) Agent George Johnson interviewed the defendant before his arrest. The defendant admitted some unintentional touching had occurred, describing awakening to find J.W. in his bed and his hand on J.W.'s bare penis or his own bare penis against J.W.'s bare buttocks.

The district court held a hearing the day before trial to determine whether J.W. could testify. J.W. stated that the defendant put his "big, hairy pee pee in his butt," and he also wiped it on his face and nose. He explained that white stuff came out of the defendant's "pee pee" and that the defendant told him to lick it off. J.W. also stated that this happened outside of the car by the river and a bridge, and he said that this had happened five times. He also said the defendant had made him lie down in the car and had put his hard "pee pee" in his butt. J.W. reiterated that the defendant tied him up with a rag in the bathtub and made him hit his head. He denied helping the defendant take a bath. According to J.W., the defendant threatened to kill him if he told anyone what had happened.

When J.W. had more difficulty testifying at trial, a transcript of his earlier testimony was admitted into evidence in addition to live testimony that the defendant was naked when they were fishing, that he put his "pee pee" in his "butt," that he told him to lick the white stuff that came out, that he forced him to bend over, and that he tied him up.

Before trial, the State moved to admit K.S.A. 60-455 evidence that the defendant had molested two stepdaughters and a sister-in-law from a prior marriage as relevant to establish intent, plan, and absence of mistake or accident. The district judge granted the motion after a hearing and affirmed that ruling when the defense renewed its objection before the testimony came in at trial:

"Well, we talked about this when I made my initial ruling under 60-455 and the three things that are required under *State v. Nunn*, 244 Kan. 207. In this particular case the Court found in my prior ruling the acts were similar. There was same act oral sex, some type of masturbation to ejaculation. The place was away from or the place was actually where he was the only adult there. There was always a threat not to tell anyone. There was fondling. The ages of the children were very close and they were stepchildren.

"Obviously intent may be an issue although intent is not an issue in the crime itself. Count 2 only requires that he engage in lewd fondling. There was an intent to arouse. In the other one engage in sodomy. It doesn't require intent but the probative value is the plan or in this particular case the absence of mistake since he's claiming it never happened, and for those two reasons only. So your motion is denied. I'll allow Miss [M.] to testify and the others to testify."

The defendant's former stepdaughters and sister-in-law testified at trial. One testified that, when she was 6 or 7, the defendant had forced her and the other girls to bathe his genitals when their mother or sister was not home.

Another testified that she was 7 or 8 when the defendant forced the girls to bathe him and stroke him until he ejaculated. She relayed that he also would take them into a barn, hold their hands in the air, fondle their chests and private parts, and make them play with his penis. She did not recall any oral contact. On another occasion, he forced her to lie down on a bed and stroke him while he put his hands into her pants. The defendant threatened that he would hurt the girls if they disclosed the abuse.

The third of the defendant's earlier victims described the abuse in the barn. She also recalled that she and one of the other girls performed oral sex on the defendant. On another occasion, the defendant took her to a cemetery, where he forced her to perform oral sex.

Therapist Lynn Holliman treated J.W. for sexual abuse on 29 occasions, and she testified as an expert witness on behalf of the State. During therapy, J.W. told her that the defendant had put his "pee pee" up his bottom and hurt him. On one occasion, J.W. said to the therapist: "I'm going to suck you off." These verbalizations, in conjunction with J.W.'s consistent play themes of fear, hiding, and a need to run fast, were indicators of sexual abuse, she said. The prosecutor and Holliman also engaged in the following exchange:

"Q. And your experience with children especially children [J.W.]'s age is it unusual if they were not telling the truth to remain consistent with what they were replaying to you or to others?

"A. Children that age really don't have the ability to tell a lie with consistency over the period of time that we've talked about. Because I've been involved with it for a year so that would mean a four or five year old child telling a lie over and over and over again over the period of a year. It's not developmentally something that would happen normally.

"Q. So in your opinion it's not something that he would be able to do?

"A. No."

There was no defense objection to this series of questions and answers.

The defendant testified at trial and denied that the incidents described by J.W. occurred. He verified KBI Agent Johnson's testimony about the accidental touching he had described. He further testified that he believed Dollie and his ex-wife had made up all of the allegations of sexual abuse involving J.W. and the three girls.

At trial, the prosecutor made the following remarks to conclude her opening statement:

"I ask you to hold me to my burden of proof of beyond a reasonable doubt and again that doesn't mean that you have to have beyond a shadow of a doubt or no doubt to find this defendant guilty.

"Many of you have gone through some things in your life where you may have done it and still had some doubt. Say buy your first house. You know it's something

that you're going to do but you may still have that funny feeling in your stomach. Or even getting married. I know I'm going to do this. You got a little bit of those butterflies or that doubt. You can still have some reasonable doubt and find this defendant guilty. If you go back in that juryroom and know he's guilty but stop there, I've proven my case beyond a reasonable doubt. Again I ask you to listen carefully to all the evidence presented. I ask that you, that you hold me to my burden of proof and I ask that at the close of this trial I will come back and I will ask that you find the defendant guilty of the crime."

## In beginning her closing argument, the prosecutor stated:

"And as I told you I have the burden in this again as instructed beyond a reasonable doubt. That means you can have some doubt as to these two charges and still find the defendant guilty. Like I said if you go back into that juryroom and say I know he did it but, stop there. I've proven my case. I've proven that case beyond a reasonable doubt and I ask you to find the defendant guilty."

## The prosecutor also focused on the defendant's two explanations of how the sexual abuse allegations may have arisen. First, she pointed to the defendant's statement that Dolly had convinced J.W. to make up the story. Then she said:

"And the second statement that the defendant gave to Agent Johnson was that it was an accident. I rolled over and I meant to touch my wife and I wake up and I've got the bare penis of the four year old in my hands. Or I wake up and my erect penis is on the bare bottom of this little boy. Ladies and gentlemen, you give that the weight and credibility that you feel it deserves.

"There were not two consistent statements from the defendant. Those are two different reasons for why this happened."

## The prosecutor subsequently stated:

"You don't have to have physical evidence either ladies and gentlemen. That's not a requirement to find this defendant guilty. Again the best evidence is the testimony of that little boy and you don't have physical evidence and I've never told you that you were going to receive it. You didn't. But there was enough there that that doctor suspected that. She hotlined that. She was only under a requirement to hotline that report if she suspected it and she obviously did because that's what she did. So those are the things we don't have.

"What do we have? Again we have the victim. The victim tells his grandma, and he doesn't only tell them, he shows them things. Things that he doesn't always realize they're coming up on him. They walk into his room and he's trying to put his hot dog in his bottom. When he's in the tub and he's trying to bind himself up because that's how Sean tied him up. Sean cut him and he shows them this is the position I had to stand in. This is how he was going to cut me. He was going to throw me in the river."

On rebuttal, the prosecutor made the following relevant remarks:

"[A]gain you have to look at the detail this little boy gave and you have to use your common sense. . . .

"Well, he added detail. At first he says it happened in the car. Later he said it was in the car or outside. It may have happened more than once I don't know. You have two charges you're dealing with. It happened in Doniphan County. It happened between the dates that it happened. He was under 14 years of age. Was he sodomized and was he fondled. Those are the things I have to prove."

### *Admission of K.S.A. 60-455 Evidence for Intent, Absence of Mistake or Accident, or Plan*

K.S.A. 60-455 provides:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as a basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

Three requirements must be satisfied for evidence to be admitted under K.S.A. 60-455: (1) The evidence must be relevant to prove one of the facts specified in the statute; (2) the fact must be a disputed, material fact; and (3) the probative value of the evidence must outweigh its potential prejudice. *State v. Moore*, 274 Kan. 639, 647, 55 P.3d 903 (2002). "If the requirements for admission of evidence of prior crimes pursuant to K.S.A. 60-455 are met, the scope of appellate review is limited to whether the district court abused its discretion. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable." *State v. Tiffany*, 267 Kan. 495, Syl. ¶ 2, 986 P.2d 1064 (1999).

### Intent and Absence of Mistake or Accident

The defendant argues that neither intent nor absence of mistake or accident was at issue in this case, because he merely denied the acts underlying the charges.

Absence of mistake or accident and intent are related concepts. Absence of mistake denotes an absence of honest error, and evi-

dence of prior acts helps to demonstrate that the criminal act alleged was intentional. *State v. Graham*, 244 Kan. 194, 197, 768 P.2d 259 (1989).

The defendant is correct that he never claimed the charged acts at the river were innocent. His statement regarding unintentional touching when J.W. was sleeping with him had nothing to do with the alleged behavior at the river. The district court erred by relying upon this statement to admit evidence to show absence of mistake or accident.

The more difficult question is whether the evidence was admissible to show intent when Davidson simply denied that the acts ever occurred, rather than defending on the basis of noncriminal intent. Kansas case law has not always been consistent on this point.

In *State v. Bly*, 215 Kan. 168, 176-78, 523 P.2d 397 (1974), in which an armed robber extracted money from a store owner at gunpoint, the court held that the defendant's felonious intent was obvious from the act itself and therefore was not in dispute. In such cases, it is error to admit prior crimes evidence to prove intent.

In *Graham*, the court admitted evidence of two prior convictions to show intent because the defendant's possession of an illegal substance was susceptible to both an innocent and a criminal interpretation. 244 Kan. at 196-97. In so doing, the court held:

"The crucial distinction in admitting other crimes evidence under 60-455 on the issue of intent is not whether the crime is a specific or general intent crime, but whether the defendant has claimed that his acts were innocent. Where criminal intent is obviously proved by the mere doing of an act, the introduction of other crimes evidence has no real probative value to prove intent." 244 Kan. at 198.

This holding was followed in *State v. Nunn*, 244 Kan. 207, 211-12, 768 P.2d 268 (1989), in which prior crimes evidence could not be admitted to show intent because the defendant had simply denied that the alleged sexual abuse occurred.

*State v. Damewood*, 245 Kan. 676, 783 P.2d 1249 (1989), stands in contrast to *Bly, Graham,* and *Nunn*. In *Damewood,* the district court admitted evidence of similar sexual abuse of another victim to show intent, plan, and to corroborate the story of the victim.

The defendant had denied the alleged criminal behavior occurred and argued on appeal that intent was not an issue because proof of the mere doing of the alleged acts was sufficient to demonstrate intent. The *Damewood* court concluded:

"In *State v. Fisher,* 222 Kan. 76, 85, 563 P.2d 1012 (1977), we held evidence of prior similar sexual acts was admissible to prove intent and 'plan or design.' In *State v. Crossman,* 229 Kan. 384, 624 P.2d 461 (1981), the defendant was convicted of two counts of indecent liberties with a child and one count of aggravated sodomy. Evidence of prior sexual acts with the same child was admitted independent of K.S.A. 60-455 under our rule that in cases involving illicit sexual activity with a child evidence of prior similar acts between the same parties is admissible independent of K.S.A. 60-455. However, in doing so the court commented, 'This is not to say that evidence of prior acts could not have been introduced pursuant to K.S.A. 60-455 to establish intent.' 229 Kan. at 387 (citing *Fisher.*) We conclude that the testimony of M.S.R. was properly admitted to show intent." 245 Kan. at 681.

In *State v. Clements,* 252 Kan. 86, 843 P.2d 679 (1992), the district court admitted evidence that the defendant had sexually abused another young boy to show intent and plan. Defendant cited *Graham* and *Nunn* in arguing that intent was not an issue because he denied committing the crimes, but the court found that intent was at issue because the act, a backrub, did not constitute sexual battery on its face. 252 Kan. at 90.

In *State v. Dotson,* 256 Kan. 406, 413, 886 P.2d 356 (1994), the Kansas Supreme Court again held, as in *Nunn,* that intent was not a materially disputed issue unless the defendant alleged his acts were innocent.

In *State v. Tiffany,* 267 Kan. 495, 986 P.2d 1064 (1999), the defendant was convicted of aggravated indecent liberties with a child after the district court admitted evidence of prior uncharged sex crimes against other children to show intent. Because Tiffany completely denied any sexual misconduct occurred, this court had held that the evidence should not have been admitted because intent was not a disputed material fact under *Dotson.* Given the record as a whole, however, the admission was held harmless error by the Court of Appeals in *State v. Tiffany,* No. 77,835, unpublished opinion filed October 9, 1998. On petition for review, the Kansas Supreme Court disagreed with this court's reliance on *Dot-*

*son* by citing several rape cases in which the district court had allowed other women to testify that they had been attacked or raped by the same defendant in a similar manner to show, among other factors, intent and plan. 267 Kan. at 499-500. *Tiffany* finally relied upon *Damewood* and *Clements* to conclude that the evidence was properly admitted to show plan, without further commenting on the intent issue. 267 Kan. at 501-02.

In *State v. Rucker,* 267 Kan. 816, 987 P.2d 1080 (1999), the defendant was convicted of aggravated indecent liberties with a child, and he argued his intent was not at issue in the case because his defense was that the act did not occur. The court examined prior decisions, including *Damewood, Clements,* and *Fisher,* and noted *Damewood* had expanded *State v. Crossman,* 229 Kan. 384, 624 P.2d 461 (1981), to hold that testimony the defendant committed similar sexual acts with someone other than the complaining witness was properly admitted to show intent and plan. The court concluded that a "similar situation clearly exists under the fact of this case." 267 Kan. at 826. However, the court stated:

"The logic and reasoning behind the admission of similar sexual misconduct based on the proof of intent may be questioned in prior cases as well as this one, but the evidence admitted in each case clearly shows plan. And, we have held that even if erroneous for one reason, where there are other reasons for admission which follow the exceptions, the error is harmless." 267 Kan. at 827.

The most recent cases from the Supreme Court and our court seem to require the defendant to have asserted an innocent explanation before intent will be considered a disputed material issue. See *State v. Spurlock,* 30 Kan. App. 2d 921, 927, 52 P.3d 371 (2002) (relying on *Bly* to find prior crimes evidence inadmissible to prove intent; defendant did not offer innocent explanation); *State v. Gibson,* 30 Kan. App. 2d 937, Syl. ¶ 4, 52 P.3d 339 (2002) ("The crucial distinction in admitting evidence of other crimes under K.S.A. 60-455 on the issue of intent is not whether the crime is a specific or general intent crime, but whether the defendant has claimed that his or her acts were innocent"); *State v. Plaskett,* 271 Kan. 995, 1020, 27 P.3d 890 (2001) ("Intent and related facts are not at issue in that defendant denied all allegations").

Following this trend, we hold that the K.S.A. 60-455 evidence questioned here was inadmissible to demonstrate intent. The defendant completely denied that any of the charged conduct took place. His innocent explanation had nothing to do with the charged acts. The district court abused its discretion by admitting the prior sexual abuse testimony to show intent.

Plan

K.S.A. 60-455 evidence may be admitted to show plan under two theories. First, the admission of prior crimes or bad acts evidence is permissible when there is some direct or causal connection between the prior acts and the crime charged. Second, such evidence may be admitted to show the modus operandi or general method used by a defendant to perpetrate similar but unrelated crimes. The expressed rationale behind this rule is that the method of committing the prior acts is so similar to the method of committing the charged acts that it is reasonable to conclude the same individual committed both. *Rucker,* 267 Kan. at 828 (citing *Damewood,* 254 Kan. at 681-82).

The first theory for admission is clearly inapplicable to this case. Under the second theory for admission of K.S.A. 60-455 evidence to show plan, Kansas courts have admitted evidence of a prior crime when the method it demonstrates was "strikingly similar" to the method of the charged crime. See, *e.g., Rucker,* 267 Kan. at 826-28 (both victims 5-year-old stepchildren abused until puberty; defendant applied lubricant, rubbed their vaginal areas with his penis until ejaculation, slapped them if they protested, threatened to kill their pets); *Damewood,* 245 Kan. at 678-80 (both victims young teenagers employed by defendant in beekeeping operation; sexual acts on which charges based similar); *State v. Aldaba,* 29 Kan. App. 2d 184, 190, 25 P.3d 149 (2001) (both victims young boys; sex acts similar; both occurred when defendant staying in same residence as victim overnight; both threatened with bodily harm if abuse revealed); see also *Tiffany,* 267 Kan. at 500 (defendant used similar words to entice victims; victims about same age; criminal conduct performed in the same manner.)

In this case, some similarities exist between the prior conduct and the current crime: all of the victims were related to the defendant by marriage and under the age of 10; some form of fondling to ejaculation was among the sex acts; the abuse happened when other adults were not present; and all of the victims were threatened. Some of the other similarities, *i.e.*, restraint of the victims and the use of the bathtub, are not relevant to proving plan in this case because they relate to uncharged acts. And, finally, some of the similarities between the prior acts and the charged acts, *e.g.*, isolation of and threats toward the victim, are present in nearly all child sexual abuse scenarios.

In addition, there are several dissimilarities. Most of the charged acts do not match the behavior engaged in with the girls, and the victims were different genders.

We conclude this case lacks the "striking" similarities that have marked our precedents. Under these circumstances, it was error for the district court to admit the K.S.A. 60-455 evidence to prove plan.

Harmless Error

"Normally, the admission or exclusion of evidence is measured by the harmless error rule. In determining if the erroneous admission or exclusion of evidence is harmless, the court must consider if it is inconsistent with substantial justice, *i.e.*, affects the substantial rights of a defendant and, if not, whether this court can declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial." *State v. Henry*, 273 Kan. 608, Syl. ¶ 7, 44 P.3d 466 (2002).

In *Dotson*, evidence of defendant's prior sodomy crime was erroneously admitted under 60-455, but the court concluded that it was not reversible error in view of the strength of the evidence. 256 Kan. at 413. In that case, the defendant had admitted to facts sufficient to support one of the many charges he was facing, and he offered no evidence that the acts were committed innocently.

This case is distinct. J.W.'s testimony was not corroborated, as the victim's was in *Dotson*. There can be little question that the K.S.A. 60-455 evidence was prejudicial and, we conclude, unduly

and harmfully so. This case must be reversed and remanded for new trial.

### Admission of Therapist's Testimony

The admissibility of expert testimony lies within the sound discretion of the district court. *State v. Mullins*, 267 Kan. 84, Syl. ¶ 3, 977 P.2d 931 (1999). However, an expert witness may not pass on the weight or credibility of evidence, for those matters are strictly within the province of the jury. *State v. Struzik*, 269 Kan. 95, 99, 5 P.3d 502 (2000).

The defendant argues the district court abused its discretion by permitting J.W.'s therapist to testify about his credibility. The defendant acknowledges that he did not object to this testimony at trial; however, he urges this court to consider the issue to preserve his fundamental right to have his guilt or innocence determined by a jury.

A party must make a timely and specific objection to the admission of evidence at trial to preserve the issue for appeal. *State v. Albright*, 273 Kan. 811, 824, 46 P.3d 1167 (2002). Despite the defendant's urgings, the Kansas Supreme Court has refused to consider allegations that the State's expert witness testified about the weight and credibility of another witness in the absence of a timely objection. See *State v. Wilson*, 247 Kan. 87, 98, 795 P.2d 336 (1990); *State v. Garcia*, 233 Kan. 589, 608, 664 P.2d 1343 (1983). Were this case not being reversed and remanded on the 60-455 issue, we would be precluded from addressing the merits of this issue. As the case will make a return trip to the district court and is likely to be retried, we opine on the merits to guide the future exercise of the court's discretion on this matter.

The defendant's point is well taken. On any retrial, the therapist should not be permitted to testify that, as a 4-year-old, J.W. was not capable of concocting the allegations. A therapist, although perhaps through disposition and training more attuned to manufactured evidence, is not permitted to act as the jury's human lie detector.

### Prosecutorial Misconduct

The defendant's next issue on appeal involves comments made

by the prosecutor during opening and closing. He argues the comments constituted reversible error because they distorted the burden of proof, referred to matters not in evidence, and misstated the defense. There was no objection at trial, but reversible error can be found if the prosecutor's statements violate a defendant's right to a fair trial and deny a defendant his or her Fourteenth Amendment right to due process. *Henry*, 273 Kan. 608, Syl. ¶ 4. Where the appellate court determines that the misconduct may rise to the level of violating a defendant's right to a fair trial, the claimed error will be considered despite the absence of contemporaneous objection. *State v. McCorkendale*, 267 Kan. 263, 278, 979 P.2d 1239 (1999).

A two-step process is used to determine the effects of a prosecutor's statements: (1) Were the remarks outside the considerable latitude the prosecutor is allowed in discussing the evidence; and (2) were the remarks so gross and flagrant that they prejudiced the jury against the defendant and denied him or her a fair trial? *Henry*, 273 Kan. 608, Syl. ¶ 5.

We also consider at least the following three factors: "(1) whether the misconduct is so gross and flagrant as to deny the accused a fair trial; (2) whether the remarks show ill will on the prosecutor's part; and (3) whether the evidence against the defendant is of such a direct and overwhelming nature that the misconduct would likely have little weight in the minds of the jurors." *State v. Jones*, 273 Kan. 756, 782, 47 P.3d 783 (2002).

In this case, neither the prosecutor's individual comments in isolation nor their combination rose to the level that the defendant was denied a fair trial. The prosecutor acknowledged that she bore the burden of proof beyond a reasonable doubt, and the jury was given a reasonable doubt instruction. Any subtle error in her definition of reasonable doubt was not critical. In addition, her statement that "[i]t may have happened more than once I don't know," constituted a fair inference from J.W.'s version of events. Her statement that the defendant cut J.W. was unsupported and improper but, in the context of the entire case, not reversible. Similarly, any inappropriate implication that Robert's physical exam of the victim prompted a hotline report was undercut by her clear statement

that no physical evidence of abuse existed. Finally, although the prosecutor may have mischaracterized the defendant's statements about unintentional touching of the victim as a defense, we do not regard this error as reversible either.

### Cumulative Error

The defendant's last argument on appeal is that he is entitled to a new trial based on cumulative error. We do not address this argument because the case already is subject to reversal and remand.

Reversed and remanded for new trial.