No. 67,811

STATE OF KANSAS, *Appellee*, v. ROBERT SYNORACKI, *Appellant*.

(853 P.2d 24)

Opinion filed May 28, 1993.

*B. Kay Huff*, special appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the briefs for appellant.

*Ty Kaufman*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the briefs for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by the defendant, Robert Synoracki, from his conviction of attempted first-degree murder.

The defendant raises many issues that center around two areas. The first area concerns a written statement of a State witness that was introduced into evidence after the defense rested and that was allowed into the jury room during deliberations. The second concerns the introduction of evidence of conviction for a prior crime during cross-examination of the defendant and then, during closing argument, the prosecution arguing the conviction showed the defendant was a violent man.

On October 5, 1991, at approximately 11:00 p.m., McPherson police officers responded to a 911 call that there was a fight involving a knife in the street near Tootsie's Bar and Grill. When the officers arrived, the street was empty. Entering Tootsie's, they found Rory Peters lying face down on the floor with a stab wound in his chest. Patrons told the officers "Bob" had stabbed the victim. When asked by the officers, Peters said "Bob" had stabbed him. Cindy Hartley informed the police the "Bob" to whom Peters referred was Robert Synoracki. Hartley, Peters, and Synoracki lived in the same trailer court and were acquainted.

Mildred Fulton and her fiance owned Tootsie's bar. Fulton had fired Synoracki a week earlier for drinking on the job, but had rehired him on the condition he not drink on the job. When Peters arrived at the bar, Synoracki asked Peters to bring him a glass of whiskey from his trailer. Peters did so, but left the glass of whiskey in his truck. He refused to bring it inside because Tootsie's was licensed only to serve beer.

Peters spent the evening at the bar, drinking beer and shooting pool. During the course of the evening, the glass of whiskey was found in the restroom. Peters indicated to Fulton's fiance that the whiskey belonged to the defendant. When Fulton confronted Synoracki, he denied that it was his whiskey and that he had been drinking it. Fulton, however, smelled whiskey on Synoracki's breath and fired him. The defendant would not leave peacefully so Fulton's fiance physically evicted him from the premises. Synoracki returned three times for various reasons. Fulton testified that, during the times the defendant returned to the bar, she heard the defendant and Peters exchange words, the defendant tell Peters he would get even with him, Peters refuse to go outside with the defendant, and Peters tell the defendant to leave him alone. Synoracki testified that, although he had to be removed physically from the bar after he was fired, he was not angry about being fired. The defendant acknowledged returning to Tootsie's, but denied threatening Peters. Synoracki left the bar shortly before 9:00 p.m.

According to Hartley, Synoracki stopped by her trailer around 9:00 p.m. and was "real troubled." When she asked him what was wrong, the defendant said he had been fired because Peters had "ratted" on him about drinking on the job. Synoracki pounded

on the table with considerable force and then pulled out a knife, a silver dagger with a six-inch blade. He jabbed the knife in the air and repeated several times: "I'm gonna kill him." Hartley told the defendant to put the knife away, which he did, but he kept threatening to kill Peters. When Hartley suggested it was not worth doing 40 years over $150-a-week job, Synoracki's response was that he had been to prison before and he could do it again. She said the defendant remained angry and very agitated. Synoracki stayed about an hour before leaving to buy cigarettes. When he returned about 45 minutes later, Hartley described him as "very calm, very set." Hartley testified that Synoracki told her he had made up his mind—Peters was a dead man. According to Hartley, the defendant also threatened to terrorize or kill Peters' fiancee, who was six months pregnant.

Synoracki testified he went over to Hartley's trailer because he was upset emotionally and needed a shoulder on which to cry. The defendant acknowledged telling Hartley "that everything was fucked up" and that Peters had ratted on him. Synoracki testified he was not sure what he had said and whether he had threatened to kill Peters and to kill or terrorize Peters' fiancee. The defendant denied having a knife when he was at Hartley's trailer.

Synoracki testified he returned home after leaving Hartley's the second time and while there decided to slash the tires on Peters' truck because Peters had ratted on him. The defendant said he grabbed a knife and returned to the vicinity of Tootsie's. He knew Peters' truck was parked behind the bar. Synoracki described the knife as a brown-handled steak knife with a serrated edge. The defendant said he was unable to slash Peters' tires because the blade on his knife bent and would not cut the rubber. The defendant then decided to let the air out of Peters' tires. According to Synoracki, Peters saw him and hollered, "[I]f you got a problem with me, you better deal with me." The defendant claimed Peters charged him, began hitting and kicking him, and knocked him almost unconscious. Synoracki testified that he never swung at Peters, that he pleaded with Peters to stop, and that Peters threatened to kill him. In trying to get away from Peters, the defendant said he kept backing up until they ended up in the middle of the street. Synoracki said he heard vehicles and

that when a vehicle stopped, Peters said, "Officer, he's got a knife." The defendant acknowledged that he had the knife out, but said it was for protection. Synoracki maintained Peters saw the knife before he lunged toward the defendant and ended up being stabbed. The knife was never located, but the defendant claimed the knife that stabbed Peters was the same knife with which he attempted to slash Peters' tires. Synoracki testified that although the blade bent when he attempted to slash the tires, the blade sprang back.

Peters testified that after going outside with Synoracki, he remembered arguing with the defendant. During the argument, Peters recalled seeing someone who looked like an officer. Peters said that after the defendant charged him, he kicked the defendant once or twice and hit him two or three times. Peters then recalled telling Synoracki, "Enough" and heading toward the bar. According to Peters, the defendant yelled at him and when Peters turned around, he felt something like a finger poke in his chest. Peters did not realize he had been stabbed until he walked inside Tootsie's, felt lightheaded, and noticed some blood. Peters then collapsed on the floor.

After Synoracki left Hartley's trailer, Hartley went to check on Peters' fiancee. There was no light on or any noise coming from the trailer. Hartley decided to go buy beer and while she was at the liquor store, which was in the same vicinity as Tootsie's, she decided to tell Peters about Synoracki's threats. As she left the store, she saw Peters and Synoracki in the street and heard them arguing. Hartley heard Peters tell Synoracki that if Synoracki had a problem with him, Synoracki better deal with him. She decided to return to Peters' trailer in case his fiancee was asleep in the trailer. Hartley said calling the police was not a priority, but getting Peters' fiancee out of the trailer was. When no one responded at Peters' trailer, she returned to the area in which she last had seen Peters and Synoracki. Hartley saw police officers and, after seeing an ambulance arrive on the scene, she approached one of the officers and asked if Peters had been stabbed and if Synoracki had stabbed him. She gave a written statement to the police later that night.

Steven Nordstrum was driving in the area of the fight. Nordstrum was on his way to work at the Kansas Industrial Reformatory

as a correctional officer and was in uniform. He was not carrying a weapon. He noticed two men in the middle of the street yelling at each other. Nordstrum said the men's fists were clenched, but he did not see any hitting or any kicking. He drove up to the men, rolled down his window, and told the men to "knock it off." When he opened his car door, the interior light revealed his uniform. One of the men, who was later identified as Peters, told Nordstrum, "Officer, he's got a knife." Nordstrum saw a knife in Synoracki's left hand. Nordstrum decided not to expose the passenger in his car to the weapon. He told Peters he would call it in and drove approximately 200 yards to a nearby motel to telephone. When Nordstrum telephoned 911, he was informed the fight already had been reported.

Synoracki was arrested that evening near his trailer. When the police found the defendant, he was bleeding from the mouth and nose. His nose had been broken.

The doctor treating Peters testified that Peters had suffered a knife wound to the heart and pericardial sac over the heart. According to the doctor, if Peters had not been treated immediately, the wound would have been fatal.

A jury found Synoracki guilty of attempted first-degree murder. He received a sentence of 10 years to life. This appeal followed.

Synoracki first argues the trial court abused its discretion in admitting as rebuttal evidence the written statement Cindy Hartley had given to police the night Peters was stabbed. Hartley was a key witness for the State. The defense did not contest that Synoracki stabbed Peters. At issue was the intent—premeditation or self-defense—with which the defendant committed the act. Hartley's testimony, if believed by the jury, provided evidence of premeditation, an element of attempted first-degree murder. After its direct examination of Hartley, the State moved to admit her written statement, which was very similar to and corroborated her testimony. The trial court sustained the defense objection that the written statement was cumulative. The defendant testified on his own behalf and partially refuted Hartley's testimony on material issues. At the close of the defendant's case, the State again offered Hartley's written statement. The trial court admitted the statement as rebuttal evidence, and the jury was allowed to take the statement into the jury room during deliberations.

"Rebuttal evidence is that which contradicts evidence introduced by an opposing party. It may tend to corroborate evidence of a party who first presented evidence on the particular issue, or it may refute or deny some affirmative fact which an opposing party has attempted to prove. It may be used to explain, repel, counteract, or disprove testimony or facts introduced by or on behalf of the adverse party. Such evidence includes not only testimony which contradicts the witnesses on the opposite side, but also corroborates previous testimony. The use and extent of rebuttal rests in the sound discretion of the trial court and its ruling will not be reversed unless it appears the discretion has been abused to a party's prejudice." *State v. Prouse*, 244 Kan. 292, Syl. ¶ 2, 767 P.2d 1308 (1989).

See *State v. Grissom*, 251 Kan. 851, 931, 840 P.2d 1142 (1992) (abuse of discretion); *State v. Hall*, 246 Kan. 728, Syl. ¶ 3, 793 P.2d 737 (1990) (rebuttal evidence); *State v. Holcomb*, 240 Kan. 715, Syl. ¶ 1, 732 P.2d 1272 (1987) (same).

Synoracki contends the trial court abused its discretion in admitting Hartley's written statement because rebuttal evidence must be from "a new, independent source," not from a witness restating previous testimony. In support of this contention, the defendant cites *State v. Holcomb*, 240 Kan. 715; *State v. Willis*, 240 Kan. 580, 731 P.2d 287 (1987); *State v. Childers*, 222 Kan. 32, 563 P.2d 999 (1977); *State v. Bean*, 181 Kan. 1044, 317 P.2d 480 (1957). These cases are not on point in that the source of the rebuttal evidence was not at issue. In these cases, the rebuttal evidence happened to be in the form of testimony from new witnesses. These cases do not preclude corroborating a witness' previous testimony either by recalling the witness to testify or in the form of a written statement by the witness after the defense has attempted to refute the witness' testimony. Rebuttal evidence need not be from a different source. Rebuttal evidence also may be in documentary form. *State v. Trotter*, 245 Kan. 657, Syl. ¶ 2, 783 P.2d 1271 (1989). In the case at hand the source and form of the rebuttal evidence were permissible, and the evidence was relevant.

The defendant also maintains the trial court abused its discretion in admitting the written statement after the defense presented its case because the late admission denied him the opportunity to confront and cross-examine Hartley about her written statement. Synoracki claims he relied upon the trial court's refusal to admit the written statement after direct examination

and did not question Hartley about it during cross- examination because he did not want to chance opening the door to its admission. Although the defendant concedes the similarity and consistency between Hartley's testimony at trial and her written statement to the police, he maintains the tone of each was very different. In his brief, he contends "some of her testimony matched her statement word for word." Synoracki argues that had he known the statement eventually would be admitted, he would have cross-examined Hartley about it. He does not suggest what he would have asked or what he could have asked that had any possibility of receiving a favorable response.

If a defendant has an opportunity to cross-examine a witness, and does so, the subsequent admission of the witness' written statement, which does not contain new evidence and is consistent with the witness' testimony, does not violate the defendant's right of confrontation. See *State v. Handley*, 234 Kan. 454, Syl. ¶ 4, 673 P.2d 1155 (1983) ("The right of confrontation is satisfied when the defendant has had an opportunity to cross-examine the witnesses against him or her."); *cf. State v. Wesson*, 247 Kan. 639, Syl. ¶ 5, 802 P.2d 574 (1990) ("In cases of necessity, . . . the right of confrontation . . . [generally] is satisfied if the accused has been once confronted by the witness against him in any stage of the proceedings on the same accusation and has had an opportunity of cross-examination."), *cert. denied* ____ U.S. ____, 115 L. Ed. 2d 1032 (1991); *State v. Bird*, 238 Kan. 160, Syl. ¶ 6, 708 P.2d 946 (1985). Additionally, after the trial court admitted Hartley's written statement, Synoracki could have requested that Hartley be recalled as a witness. This would have enabled the defendant to question Hartley specifically about her statement and any perceived differences between her trial testimony and the statement. Synoracki also could have offered surrebuttal evidence. He did neither and cannot now claim prejudicial error.

The defendant also argues the trial court abused its discretion by allowing the jury to take Hartley's written statement into the jury room during deliberations because the statement placed undue emphasis on Hartley's testimony that was favorable to the State. As previously discussed, the statement was a properly admitted exhibit. "Exhibits are usually and customarily given to the jury, to be examined during deliberations. Such a matter is within

the trial court's discretion, and its action will not be disturbed in the absence of abuse of discretion." *State v. Poulos & Perez*, 230 Kan. 512, 514, 639 P.2d 477 (1982).

Synoracki previously had cross-examined Hartley about her version of the events. He chose not to dilute the impact, if any, of Hartley's written statement upon the jury by recalling Hartley as a witness or presenting surrebuttal.

Synoracki's arguments are not persuasive. "The trial court has broad discretion in determining the use and extent of relevant evidence in rebuttal. [Citation omitted.]" *State v. Blue*, 221 Kan. 185, 188, 558 P.2d 136 (1976). A reasonable person would agree with the trial court's decision to admit Hartley's written statement as rebuttal evidence. Therefore, the trial court did not abuse its discretion.

In addition, the record on appeal does not indicate the defendant lodged a contemporaneous objection to the jury having access to the written statement during deliberations.

Synoracki next argues he is entitled to a new trial because evidence of a prior conviction was admitted at trial.

Procedurally, the State filed a pretrial motion to admit, pursuant to K.S.A. 60-455, testimony concerning Synoracki's prior convictions of battery, aggravated battery, aggravated battery on a law enforcement officer, and aggravated assault. The State argued the prior convictions were relevant to the charged offense to show intent, motive, knowledge, and absence of mistake or accident. K.S.A. 60-455 provides:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and K.S.A. 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

Synoracki filed a motion in limine to exclude any reference to his prior convictions.

The trial court conducted a hearing on both motions, and prior to opening arguments ruled that only one of Synoracki's prior convictions was admissible under K.S.A. 60-455 and it was ad-

missible to show intent. The admissible prior conviction was an aggravated battery conviction from Florida based upon the defendant beating and cutting another with a beer bottle. Under Florida law, a beer bottle can be deadly weapon. The trial court then discussed how the prior conviction evidence should be presented and recommended the parties consider presenting it in the form of a stipulation as opposed to redacted documentation that a jury might misconstrue. Both parties opted for the stipulation. Although he agreed to the form, Synoracki objected to the admissibility of the prior conviction on the basis it was not relevant with regard to intent. The defendant also requested that a clarifying instruction accompany the stipulation. The trial court agreed to instruct the jury that the prior conviction could be considered only for purposes of intent.

During cross-examination, the State questioned Synoracki as follows:

"Q: Mr. Synoracki, you admit, sir, that you have a prior felony conviction for Aggravated Battery, is that so?

A: Yes, I do.

Q: You admit that you struck and cut a man with a deadly weapon in that crime, yes or no?

A: It was a beer bottle involved, yes.

Q: Deadly weapon, yes or no?

A: Yes, I believe so."

Defense counsel did not object to the State's questions. These questions and answers reflected the basic information set forth in the stipulation.

At the instruction conference, the trial court combined the stipulation with the limiting instruction. The trial judge noted: "Instruction No. 7 is the stipulation instruction. The admissibility of the prior conviction was objected to by the defense, and I don't see that as being waived, the parties agree this is the way that the facts will be put in front of the jury." Neither party objected. Instruction No. 7 stated:

"The following fact has been agreed to by the parties and should be considered by you as being true:

1. That on the 15th day of June, 1989, in Pasco County, Florida, District Court, the defendant, Robert L. Synoracki, was convicted by a plea of nolo contendere of the offense of Aggravated Battery by striking and cutting another with a deadly weapon, to-wit: a beer bottle.

This evidence of the defendant's conviction of another crime other than the present crime charged may be considered by you solely for the purpose of proving the defendant's intent."

Synoracki argues the State's questions about his prior conviction during cross-examination was an impermissible attack upon his credibility because he had not introduced evidence of his good character. See K.S.A. 60-421 ("If the witness be the accused in a criminal proceeding, no evidence of his or her conviction of a crime shall be admissible for the sole purpose of impairing his or her credibility unless the witness has first introduced evidence admissible solely for the purpose of supporting his or her credibility."). Citing *State v. Harris*, 215 Kan. 961, 529 P.2d 101 (1974), and *State v. Roth*, 200 Kan. 677, 438 P.2d 58 (1968), he maintains that for a prior conviction to be admissible under K.S.A. 60-455, the State must introduce evidence of the prior conviction in its case in chief. The *Harris* court held:

"If the prosecution desires to utilize K.S.A. 60-455 to prove one or more of the material facts specified in that statute it should be done in the state's case in chief or on proper rebuttal and it should not be attempted on cross-examination when the witness is the accused in the criminal proceeding." 215 Kan. 961, Syl. ¶ 2.

See *Roth*, 200 Kan. at 682. Here, the State did not introduce evidence of the defendant's prior conviction in its case in chief.

The State asserts there was no error because Synoracki did not object to the cross-examination. The State also suggests the stipulation cured the fact that the prior offense evidence occurred in its cross-examination of the defendant and not in its case in chief. In response, Synoracki alleges the jury should not have been allowed to consider the stipulation because an instruction is not evidence and the State never introduced the stipulation into evidence. He also points out the record on appeal does not reflect that the parties signed the stipulation.

Whether the stipulation was admitted into evidence or needed to be admitted into evidence is not determinative. The information contained in the stipulation was admitted into evidence during the State's cross-examination of the defendant. The defendant concedes that there was no contemporaneous objection to the State's cross-examination and that prior and post objections were based upon different grounds. He also did not request a

continuing objection when his motion in limine was denied. "When a motion in limine is denied, the moving party must object to the evidence at trial to preserve the issue on appeal." *State v. Clements*, 252 Kan. 86, Syl. ¶ 1, 843 P.2d 679 (1992). "The admission of evidence, even if erroneous, may not be raised as an issue on appeal unless there appears of record a timely objection so stated as to make clear the specific ground of the objection." *State v. Arrington*, 251 Kan. 747, Syl. ¶ 4, 840 P.2d 477 (1992); see K.S.A. 60-404 (contemporaneous objection rule). "[T]he defendant cannot object to the introduction of evidence on one ground at trial and then assert a different objection on appeal." *State v. Skelton*, 247 Kan. 34, 44, 795 P.2d 349 (1990). This court need not address the merits of this argument.

In any event, counsel for the defendant and the State agreed to proceed in the manner they did, and it is no more detrimental to the defendant to have the stipulation introduced one way than it is the other.

Synoracki next contends the State's comment during closing argument constitutes reversible error. In its closing remarks to the jury, the State argued:

"Instruction No. 7 tells you that defendant Synoracki is a violent person, that he has been convicted previously of use of a deadly weapon, that he has used this deadly weapon to harm another human being. The instruction tells you that you are to use this information to determine what the intent of defendant Synoracki was on this evening. And I submit to you that his prior felony conviction tells you that his intent was to harm and to hurt and not to simply protect or defend himself."

Again, the defendant failed to make a contemporaneous objection. After the jury retired to deliberate, the trial judge stated:

"Let the record reflect that at the close of the opening portion of State's closing argument defense approached the Bench and requested a mistrial based on statements of the County Attorney to the effect that the conviction could be used as a showing of a violent person. I agree with defense counsel that that is error. I further would have sustained an objection had one been made. I would have cautioned the jury not to have regarded that statement if that request had been made, however, it was not. The argument has been completed and my determination on that point was that it was too late for me to do anything about it. I'm satisfied that that was not sufficient to cause a mistrial. I am calling it harmless error."

Synoracki again raised the argument in his motion for a new trial. In response, the trial court stated that even if defense would have objected timely, the court still would have found the error harmless "in view of the instructions of the Court given both before final argument as well as to a special question placed out by the jury during the course of . . . deliberations." It was the trial court's opinion that the evidence against the defendant was overwhelming and that none of the issues raised in the motion for a new trial would have changed the verdict because the jury did not "buy" Synoracki's self-defense argument.

In *State v. Baker*, 249 Kan. 431, Syl. ¶¶ 8, 9, 819 P.2d 1173 (1991), we held:

"Since Kansas does not follow the 'plain error' rule utilized in federal courts, reversible error cannot be predicated upon a complaint of misconduct of counsel during closing argument where no contemporaneous objection is lodged.

"Remarks made by the prosecutor in closing argument are harmless error if the court finds that the error had little likelihood of changing the result of the trial."

Here, the trial court found the error was harmless and would not have changed the verdict. In any event, there was no contemporaneous objection. We find no reversible error.

Synoracki's final argument is that this court should address the merits of whether his prior conviction was admissible under K.S.A. 60-455. He claims the circumstances in this case are exceptional in that the trial court told defense counsel the issue was preserved.

Here, defense counsel's initial objection concerned intent. He stated: "I want to raise an objection to allowing it in anyway on the grounds that there is a different intent, there is a specific intent involved with the Attempted First Degree Murder versus for an Aggravated Battery." The trial court responded: "You can argue that all on appeal if there is a conviction."

The defendant's specific intent argument fails. The Kansas and Florida aggravated battery statutes are similar. See K.S.A. 21-3414; Fla. Stat. § 784.045 (1991). Under Kansas law, aggravated battery is a specific intent crime. *State v. Diaz & Altemay*, 232 Kan. 307, 311, 654 P.2d 425 (1982); *State v. Seely*, 212 Kan. 195, 203, 510 P.2d 115 (1973). Moreover, "[t]he crucial distinction in

admitting other crimes evidence under K.S.A. 60-455 on the issue of intent is not whether the crime is a specific or general intent crime, but whether the defendant has claimed that his acts were innocent." *State v. Nunn*, 244 Kan. 207, Syl. ¶ 3, 768 P.2d 268 (1989).

On appeal, Synoracki raises all three prongs of the test to determine admissibility of prior convictions under K.S.A. 60-455.

"In ruling upon the admissibility of evidence of a prior crime or civil wrong under K.S.A. 60-455, the trial court must: (1) determine it is relevant to prove one of the facts specified in the statute; (2) determine the fact is a disputed material fact; and (3) balance the probative value of the prior crime or civil wrong evidence against its tendency to prejudice the jury." *State v. Grissom*, 251 Kan. 851, Syl. ¶ 28, 840 P.2d 1142 (1992).

"Appellate review of the admission of prior crimes evidence under K.S.A. 60-455 is limited to whether the trial court abused its discretion or whether the trial court admitted clearly irrelevant evidence." *Clements*, 252 Kan. 86, Syl. ¶ 2.

The trial court concluded the prior conviction was "certainly relevant and material to the issue of intent," one of the facts specified in K.S.A. 60-455. "The relevancy of a prior conviction to the offense charged is linked to the similarity of the two offenses." *State v. Cross*, 216 Kan. 511, Syl. ¶ 5, 532 P.2d 1357 (1975). See *State v. Hanks*, 236 Kan. 524, Syl. ¶ 6, 694 P.2d 407 (1985) ("K.S.A. 60-455 does not require the prior offense to be identical in nature to the offense for which defendant is on trial; it is sufficient if the offenses are similar."); see also *State v. Faulkner*, 220 Kan. 153, Syl. ¶ 2, 551 P.2d 1247 (1976) (materiality defined). The trial court noted the factual similarities between the prior conviction of aggravated battery and the charged offense, specifically mentioning the prior conviction was based upon the defendant "striking out and cutting the victim" with a deadly weapon.

Synoracki contends "prior offenses must have similarities of 'conduct and circumstances' other than being the same type of crime." The defendant cites *State v. Rupe*, 226 Kan. 474, 601 P.2d 675 (1979), and *State v. Henson*, 221 Kan. 635, 562 P.2d 51 (1977), for the proposition that K.S.A. 60-455 requires "more detailed similarities" than the fact the prior conviction and the charged offense both involved violence against a person and the

use of a deadly weapon. In *Rupe*, the similarities were "unprovoked attacks involving the same people in the same house after a sudden entrance by defendant on both occasions when he appeared to have been drinking." 226 Kan. at 478. In *Henson*, the similarities were that the attacks occurred in apartments, involved young women about the same age whom the defendant either knew or had dated, involved the use of a knife, and were sexually motivated. 221 Kan. at 645.

Although both *Rupe* and *Henson* discuss detailed similarities, neither case requires that all admissible prior convictions to prove intent have as much similarity with the charged offense as was present in those cases. The *Henson* opinion does not discuss how much similarity is required, and the similarities set forth went to the issue of identity, not intent. Proving intent does not require as much detailed similarity as proving identity. See *State v. Bly*, 215 Kan. 168, 177, 523 P.2d 397 (1974) (" ' "The quality of sameness is important when pondering the admission of other crimes to prove identity." ' "), *overruled on other grounds State v. Mims*, 220 Kan. 726, 556 P.2d 387 (1976). The *Rupe* decision, which involves proving intent, refers to "similarity of conduct and circumstances." 226 Kan. at 478. See *Cross*, 216 Kan. at 520 (there must be " 'a pattern, similarity or connection between the facts surrounding the prior offense and the one with which the accused is presently charged.' "). Here, the similarity of conduct or pattern of behavior is that in both instances the defendant used a deadly weapon with the intent to inflict, at the very least, great bodily harm upon another. This is sufficient to meet the similarity requirement to prove intent.

The trial court found intent was a disputed material fact. The trial judge reasoned:

"I don't think there can be any question in this case that intent is an issue. I guess I get hung up a little bit on the fact he's admitting the knifing and I presume he's admitting that he intended to knife, but it was being done in self-defense. But I don't think that changes the fact that the intent is still an issue. We have an intent to kill which is certainly an issue in the case and the State is required to prove premeditation. I think there is a pretty good case on this, which is . . . *State v. Henson*, [221 Kan. at 645], which finds that intent is certainly a portion or a part of premeditation, and I think that's clearly the case here. I think . . . this case is going to come down to one of intent, one of self-defense, but they have to prove still an

intent to kill and they still have to prove that it was premeditated. So I find intent to be a highly contested issue."

Synoracki disagrees. He argues that his intent was not contested because he relied upon self-defense and admitted acting intentionally in using the knife. According to the defendant, the issue before the jury was whether his use of force was justifiable under the circumstances. He claims that whether he previously used unjustified force had "no logical bearing" on whether the use of force in this case was justified.

Synoracki's argument is not persuasive. The defendant's intent with regard to the stabbing was at issue. The jury did not have to accept the defense theory that the defendant acted in self-defense. Because Synoracki's stabbing of Peters was susceptible of two interpretations, that he acted in self- defense or that he acted with the intent to kill, "the intent with which the act is done becomes the critical element in determining its character." *State v. Nading*, 214 Kan. 249, 254, 519 P.2d 714 (1974). See *Faulkner*, 220 Kan. at 158 (if specific intent is part of the crime charged, such as in first- degree murder, "prior convictions evidencing the requisite intent may be very probative").

The trial court found the probative value of the prior crime outweighed its prejudicial effect because intent was a "hotly contested" issue. Synoracki maintains that prejudice outweighed any probative value because the State impermissibly used the prior conviction to negate his claim of self-defense and justifiable force. The defendant bases his argument upon the fact that at the hearing to determine the admissibility of his prior convictions, the State argued the similarity between the offenses was "violence against persons" and that in closing. argument, the State contended the defendant was a violent person. What the State argued, particularly after the trial court had ruled on the admissibility of the prior conviction, is not determinative.

Synoracki's arguments are not persuasive. The trial court satisfied the three-prong test for admitting prior convictions under K.S.A. 60-455. We hold that the prior conviction was not clearly irrelevant and that the trial court did not abuse its discretion in admitting the prior conviction.

Affirmed.