NOT DESIGNATED FOR PUBLICATION

No. 116,366

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SLY MAPLES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed March 2, 2018.
Affirmed.

*Clayton J. Perkins*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before MCANANY, P.J., GARDNER, J., and TIMOTHY L. DUPREE, District Judge, assigned.

PER CURIAM: Sly Maples was tried for abuse of a child and felony murder. He
was convicted of abuse of a child and sentenced to 136 months' prison based on a
criminal history score of A. These charges stem from incidents that occurred between
January 19, 2015, and January 20, 2015, that ultimately lead to the death of A.D.

On January 19, 2015, Maples choked and shook A.D. causing severe bruising
around her neck and jaw area and fingernail cuts on her neck. On January 20, 2015,
according to Maples, he fell off a slide onto A.D. causing her to suffer brain bleeding and
swelling, ultimately leading to her death.

1

Maples' criminal history score of A was based on two adult person felonies and three juvenile adjudications that would have been person felonies had they been committed by an adult. Maples appeals his conviction, asserting that the district court improperly admitted evidence of his prior bad acts. He also challenges his sentence claiming his criminal history score of A is incorrect in light of the 2016 amendments to the decay statute.

FACTS

Sly Maples was convicted by a jury of abuse of a child. The acts for which he was charged occurred between January 19, 2015, and January 20, 2015. This appeal, however, focuses on the details that occurred prior to January 19th and 20th, so we will first discuss the history of the parties leading up to those dates.

S.D. met Maples around October 25, 2014. Within a week of meeting Maples, S.D. moved into his home and entered into a romantic relationship with him. About five days later, S.D. moved her one-year-old daughter, A.D., into the home.

While A.D. was living with Maples and S.D., she sustained multiple injuries. The first injury occurred in early December 2014 when Maples slapped A.D. in the face with his hand. This occurred a month prior to A.D.'s second birthday. On this occasion, Maples stated that A.D. just kept screaming and disobeying him, so he swatted her across the head. This caused A.D. to suffer a black eye and bruising on her head. Maples did not inform S.D. of this event until nearly a month later.

The second injury occurred around January 1, 2015, when A.D. fell off her rocking giraffe and scratched up her head and back while Maples was watching her. On that occasion, Maples contends that A.D. was playing in the living room while he was playing video games in his bedroom. Maples said he heard A.D. sliding the giraffe

around, and about 20 minutes later he heard her fall and start crying. He contends that he then attended to A.D.'s injuries and informed S.D. of the fall.

The third injury occurred around January 8, 2015, just prior to A.D.'s second birthday, when A.D. hit her head on the bathtub. On this occasion, Maples claims that he placed A.D. on the toilet and then gave A.D. her privacy. He claims that when A.D. was finished, he entered the bathroom to help her down off the toilet. He claims that when he entered the bathroom, A.D. had already begun sliding off the toilet, and when he reached down to help her, she pulled away causing her to lose her balance, fall, and hit her head on the adjacent bathtub. This incident caused a large knot to form on A.D.'s forehead just above her left eye. A.D. acted normal in the days that followed this incident and did not appear to have suffered any major injuries.

On January 14, 2015, Maples and S.D. took A.D. to the emergency room because she had a stomach ache. It was determined that A.D. had a urinary tract infection. A.D.'s grandmother met them all at the hospital, and she asked the doctor whether it appeared that A.D. was being abused based on her always having bruises and her always getting sick. The doctor did not indicate that there was any evidence of abuse.

Around January 15, 2015, Maples and S.D. moved to Wichita because Maples owned a home in Wichita and believed they would have a better opportunity to find work there. A.D. initially went to live with her grandma in Oklahoma but then moved into the Wichita home on January 18, 2015. Maples claims that when A.D. arrived at the Wichita home, she had a scratch mark near her collarbone/neck area.

On January 19, 2015, Maples awoke to find A.D. all alone in the living room crying. S.D. was outside smoking a cigarette. Frustrated with the situation, Maples reached out with his right hand and grasped A.D. around the neck, shook her, told her to calm down, and told her that they were not going to have crying all day and they should

3

have a good day. In a police interview, Maples stated multiple times that he shook A.D. really hard. In the same interview, Maples demonstrated with a doll how he was violently shaking A.D. Maples said that he did this to correct A.D.'s behavior.

On January 20, 2015, Maples, S.D., and A.D. went to the library so S.D. could complete an online job application. After arriving, Maples took A.D. to see the books and then took her out to the playground. The events that followed are uncertain, as Maples provided three different stories as to what transpired, and there is no video evidence or eyewitness evidence of the events that occurred on the playground. What is certain is that the video camera near the exit of the library shows Maples carrying A.D. upright and alert towards the playground. About four minutes later, the video shows Maples carrying A.D. away from the playground. Her body was limply laying across his arms, and her feet were hanging down.

In his final narration of the event, Maples testified that while he and A.D. were at the playground, he attempted to run up and down the short four-foot plastic slide with A.D. in his arms. He claimed that while he was running down the slide, he slipped and fell forward with A.D. still in his arms. Maples claims that A.D. struck her head on the ground and he landed on top of her. Maples saw blood in A.D.'s mouth and noticed that her eyes were not focusing, so he carried A.D. to his truck and placed her in her car seat. Maples then left the parking lot, drove home to get his driver's license and wash his shirt, and then returned back to the library to pick up S.D. approximately 18 minutes later. While Maples was driving back to the library, A.D. began to pass out so Maples started grabbing her foot and calling her name.

When Maples returned to the library, he parked his truck and began trying to get A.D. to wake up by calling her name and shaking her. S.D. then came out of the library and Maples told S.D. that A.D. hit her head and that they needed to take A.D. to the

4

hospital. Maples and S.D. took A.D. to the hospital. When A.D. arrived at the hospital, she was already in a coma and completely nonresponsive.

The attending physician noted seeing significant bruising around A.D.'s neck, jaw, shoulders, abdomen, back, and thigh. The doctor also observed seeing scabs around her neck that were "consistent with fingers grabbing her or digging into her neck, causing indentations around her neck." When asked if his actions on January 19th caused the bruising and cuts around A.D.'s neck, Maples responded that he did not think that he had grabbed A.D. that hard and that he did not know that this action caused any bruising but that it was possible that he had caused the injuries.

A CT scan revealed that A.D. had a subdural hematoma, swelling, and edema in the brain causing herniation into the spinal cord. The CT scan also showed that A.D. had previously suffered trauma to her head causing a separate brain bleed. The doctor opined that these types of injuries can be caused by some sudden stopping of the head, such as would typically occur in a car accident or from other trauma to the head. The doctor opined that this type of injury would not be typical of someone falling from a distance of four feet. The doctored further stated that this type of injury gets worse as time goes on if it is left untreated. After the attending physician discussed A.D.'s condition and prognosis with S.D., she requested that the doctors take A.D. off of life support. A.D. died 20 to 30 minutes later.

A subsequent autopsy revealed that A.D. had a tenth and eleventh rib fracture, bleeding in the thymus, and retinal bleeding. One of the rib fractures was old and healing and had been rebroken in the same location as an old break while the other rib fracture was a new break.

Maples was charged with felony murder for the events that transpired on January 20, 2017, and abuse of a child for the events that transpired on January 19, 2017.

5

Prior to trial, the State filed a motion for the admission of evidence under K.S.A. 60-455. The evidence that the State asked to be admitted included when Maples slapped A.D. in early December 2014, when A.D. was injured while playing with the rocking giraffe in January 2015, when A.D. hit her head on the bathtub in January 2015, and evidence of an incident in 2012 when Maples was accused of strangling his girlfriend. Because Maples was asserting that A.D.'s death was due to an accidental fall that occurred while Maples and A.D. were at the playground, the State argued that the evidence was relevant and should be admitted to show absence of a mistake or accident and to show Maples' violent history with A.D. In addition, the State argued that the evidence should be admitted to show the identity of the person that committed the violence against A.D. due to Maples claiming A.D. could have been injured by other adults. The State asserted that the evidence of the prior accusation of strangulation of his girlfriend would also support a lack of mistake and identity of a person that resorts to strangulation when they are angry at another person.

Maples, through counsel, argued the prior incidents with A.D. should not be admitted because they were unduly prejudicial, and the prior strangulation of his exgirlfriend should not be admitted to show identity because they are factually distinct so it would not show a common identity.

The district court ruled (1) evidence of the prior strangulation of Maples' exgirlfriend was not admissible; (2) the evidence of Maples slapping A.D. in December was admissible to prove absence of a mistake; and (3) the evidence of A.D.'s falls that occurred while she was under the supervision of Maples was admissible to show a relationship between the parties. The court noted that the absence of mistake and relationship of the parties had a tendency to prove that Maples knowingly tortured or beat A.D. The court then noted that absence of mistake and the relationship of the parties were clearly significant and in dispute in light of Maples' defense of accidental death. The

6

court finally noted the probative value outweighs the potential for undue prejudice based on the limiting instruction that would be given to the jury.

At trial, the State introduced the K.S.A. 60-455 evidence on multiple occasions. The State first mentioned the evidence during the testimony of Dr. Maged Botros, when the State asked Dr. Botros whether A.D.'s prior brain bleed could have been caused by A.D. hitting her head on the bathtub. In this instance, the State did not give any specific details of the bathtub incident that would point to Maples' involvement, but instead asked the question as more of a hypothetical scenario. The defense objected on the basis of speculation and failure to establish a foundation for the bathtub incident. The court overruled the objection, and Dr. Botros answered that a slip and fall from such a short distance would be unlikely to cause a brain bleed.

The State again introduced the K.S.A. 60-455 evidence during the testimony of S.D. When the State asked S.D. about the December slapping incident, Maples objected "for purposes stated during pretrial motions." The district court overruled the objection. The State then asked S.D. about the January rocking giraffe incident, and Maples objected on the basis of the pretrial motion. The district court overruled his objection. The State then discussed the same details of the December slapping incident, and the defendant did not object. The State then asked S.D. about the bathroom toilet/tub incident, and Maples objected on the basis of the pretrial motion. The district court overruled the objection.

The State again introduced the K.S.A. 60-455 evidence during the testimony of A.D.'s grandmother. The State first questioned A.D.'s grandmother about the December slapping incident. This discussion covered the same details that were brought out in the testimony of S.D. After discussing the December slapping incident, the State attempted to introduce picture evidence of the bruises that resulted from the incident. Maples objected on the basis of foundation, and the court sustained the objection. After the foundation was

7

laid for the pictures, the defendant objected to the introduction of the evidence based on the pretrial motion. The court overruled the objection. The State then questioned A.D.'s grandmother about the bathroom toilet/tub incident, but the witness did not provide any new evidence on this issue, and Maples did not object.

The State again introduced the K.S.A. 60-455 evidence during the testimony of Dr. Kathrine Melhorn. The State asked Dr. Melhorn about other injuries that A.D. sustained when she was with Maples. Maples objected and asked for a continuing objection to this type of evidence. The court overruled the objection and granted the continuing objection. After the continuing objection was granted, the State also asked Detective Michelle Tennyson about Maples' admissions to these prior acts. Maples then testified about each of the prior incidents.

The court's jury instructions contained a limiting instruction regarding the K.S.A. 60-455 evidence. For the December slap incident, the district court stated, "As it related to the December 'marks on the face' incident—this evidence may be considered solely for the purpose of proving the defendant's absence of accident as it related to the crimes charged." For the bathtub incident and the rocking giraffe incident, the district court stated, "As it relates to the January 'bathroom toilet/tub' incident and the January 'playpen/rockin' giraffe' incident—this evidence may be considered solely for the purpose of proving the defendant's intent as it relates to the crimes charged."

After a six-day jury trial, the jury convicted Maples of abuse of a child and found him not guilty of felony murder.

The pretrial sentencing report scored Maples' criminal history an A. The criminal history of A was based on two adult person felonies and three juvenile person felonies. The three juvenile person felonies—two for terroristic threats and one for burglary of a dwelling—were not severity level 1 through 4. At the time of the current conviction,

8

Maples was over the age of 25. Abuse of a child is a level 5 person felony. As a result of the criminal history score of A and the level 5 person felony, the district court sentenced Maples to 136 months' prison. Maples' appeal brings the matter to us.

ANALYSIS

Maples raises two issues in this appeal. First, he asserts the district court committed reversible error when it allowed the State to admit evidence of three prior bad acts under K.S.A. 60-455. The three acts in question relate to when Maples struck A.D. in the head in early December, when A.D. was injured with the rocking giraffe, and when A.D. was injured by the bathtub.

Maples asserts that the K.S.A. 60-455 evidence was not relevant to prove any material fact in dispute and that it was more prejudicial than probative. He contends that because the prior bad acts were merely used to show a propensity to harm the child, they should not have been admitted into evidence. Maples asserts that the introduction of this evidence unfairly prejudiced the jury, requiring us to remand the case for a new trial.

Next, Maples asserts that even if his conviction is upheld, his sentence is illegal and should be reduced to reflect the accurate criminal history score. In support of this argument, Maples asserts that the 2016 amendments to K.S.A. 21-6810(d)(3)(B), which allows certain juvenile offenses to decay, should be applied retroactively to his juvenile offenses. We will address the issues in order.

ADMISSION OF EVIDENCE UNDER K.S.A. 60-455

Whether evidence of a person's prior crime or civil wrong may be admitted is governed by K.S.A. 60-455, which allows the State to introduce evidence of a person's prior wrongs "when the district court determines that its evidentiary value outweighs the

9

potential for undue prejudice." *State v. Torres*, 294 Kan. 135, 139, 273 P.3d 729 (2012). However, K.S.A. 60-455 limits when the evidence may be admitted in order to prevent the evidence of prior misconduct from being used for the impermissible propensity purpose. 294 Kan. at 138-39.

In determining that the evidentiary value of the K.S.A. 60-455 evidence outweighs the potential for undue prejudice, the district court must find that (1) the fact to be proven is material, i.e., that the fact has some bearing on the decision in the case; (2) the material fact is in dispute and, if so, that the evidence is relevant to prove, that is, it tends to prove, the disputed material fact; and (3) the probative value of the evidence outweighs the potential for undue prejudice against the defendant. 294 Kan. at 139-40. "If the evidence meets all of these requirements, it is admitted, but . . . the district court must give the jury a limiting instruction telling [them] the specific purpose for which the evidence has been admitted (and reminding them that it may only be considered for that purpose)." 294 Kan. at 140. We review the materiality prong de novo. 294 Kan. at 139-40. We review the remainder of the analysis for abuse of discretion. 294 Kan. at 139-40.

The State first asserts that we should not reach the merits of this issue because Maples failed to preserve the issue of improper admission of K.S.A. 60-455 evidence for appeal when he failed to lodge a timely and specific objection to the alleged error at trial.

Whether an issue has been properly preserved for appeal is a question of law that this court reviews de novo. *State v. Haberlein*, 296 Kan. 195, 203, 290 P.3d 640 (2012). To preserve an evidentiary issue for review, the party must lodge a timely and specific objection at trial. K.S.A. 60-404; *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862 (2016). "Even when the district court rules on the admissibility of evidence pretrial, a party must still make an objection at trial before the admission of the evidence because the unfolding of a case may require a reevaluation of the reasons for the initial ruling." 304 Kan. at 62.

10

Here, Maples objected each time that any new K.S.A. 60-455 evidence was introduced. He objected when the evidence of each incident was first introduced during S.D.'s testimony. He further objected each time any additional, noncumulative piece of evidence was presented to the jury, including when the State introduced the photographic evidence of the slapping incident during A.D.'s grandmother's testimony. The court then gave Maples a continuing objection to the subject matter when it was discussed again during the testimony of Dr. Melhorn. Therefore, this issue is properly preserved for review.

The State next asserts we should not consider Maples' relevancy argument because Maples failed to argue at the trial level that the evidence was irrelevant.

"A defendant cannot object to the introduction of evidence on one ground at trial then assert another ground on appeal." *State v. Richmond*, 289 Kan. 419, Syl. ¶ 4, 212 P.3d 165 (2009). But challenging a different step of the K.S.A. 60-455 analysis does not amount to asserting another ground on appeal "so long as [defendant] keeps his argument within the scope of the 60-455 analysis." *State v. Grant*, No. 115,029, 2017 WL 1313832, at *5 (Kan. App. 2017) (unpublished opinion), *rev. denied* November 9, 2017.

At trial, Maples challenged the admissibility of the K.S.A. 60-455 evidence based on the third step of the analysis. Maples asserted that the potential for undue prejudice outweighed any probative value. Now Maples challenges the second prong of the analysis by claiming the K.S.A. 60-455 evidence was irrelevant to prove the disputed material facts. Maples' challenge on appeal is still within the scope of the K.S.A. 60-455 analysis, so it is properly before us.

Because this issue is properly before us, we will review each step of the K.S.A. 60-455 analysis and determine if the district court erred in admitting the evidence. In this case, Maples was charged with felony murder and abuse of a child, so the district court

11

would be in error if the evidentiary value of the K.S.A. 60-455 evidence in proving these claims did not outweigh the potential for undue prejudice that would result from the jury finding out about prior incidents of abuse.

The jury instruction for the felony murder charge required the jury to find

"1. The defendant killed [A.D].
"2. The killing was done while defendant was committing abuse of a child.
"3. This act occurred on or about the 20th day of January, 2015, in Sedgwick County, Kansas."

The jury instruction for abuse of a child required the jury to find

"1. The defendant knowingly tortured or cruelly beat [A.D.]
"2. [A.D] was less than 18 years old.
"3. This act occurred on or between the 19th day of January, 2015 and the 20th day of January 2015, in Sedgwick County, Kansas.
"The State must prove the defendant committed the abuse of a child knowingly.
"A defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about.
"'Torture' means to inflict intense pain to the body or mind for purpose of punishment.
"'Cruelly' means pitiless or designed to inflict a high degree of pain, utter indifference to, or enjoyment of the suffering of another."

*Absence of Mistake*

The district court admitted the December slapping incident to show absence of mistake as it related to the charges for abuse of the child and felony murder. Absence of mistake is an absence of honest error, mistake, or accident. *State v. Graham*, 244 Kan. 194, 197, 768 P.2d 159 (1989). The K.S.A. 60-455 evidence of absence of a mistake may be introduced to "[illustrate] that the doing of the criminal act in question was intentional." 244 Kan. at 197.

12

Maples acknowledges that absence of mistake was a material fact that was in dispute in the case in light of the prosecution's theory that A.D.'s death was not an accident but instead occurred as a result of the abuse he inflicted on her. But Maples claims that the December slapping incident was irrelevant to prove the absence of mistake. He asserts that the December slapping incident did nothing to establish that the incidents that occurred on January 19th and January 20th were not an accident because there was no logical connection between the December slapping and the choking on January 19th and the head trauma on January 20th. He further claims that the evidence was used solely to establish his propensity to commit child abuse, which is an improper use of the evidence. Because Maples has acknowledged that the first prong of the K.S.A. 60-455 analysis is met, we will review the second and third prong of the analysis.

The second prong of the K.S.A. 60-455 analysis requires us to find that the material fact was in dispute and that the K.S.A. 60-455 evidence was relevant to prove the material fact. Maples has admitted that the material fact of absence of mistake was in dispute, so we will address the relevancy portion of the argument. We review the district court's decision on relevancy for abuse of discretion. *Torres*, 294 Kan. at 139-40. Evidence is relevant when it has any tendency in reason to prove any material fact. K.S.A. 60-401(b); *State v. Barber*, 302 Kan. 367, 375, 353 P.3d 1108 (2015). Relevance requires "some material or logical connection between the asserted facts and the inference or results they are intended to establish." *State v. Gunby*, 282 Kan. 39, 47, 144 P.3d 647 (2006). Therefore, there must be a logical connection between the December slapping incident and the material fact of absence of mistake.

As stated above, in order for the State to meets its burden of proof for the abuse of a child claim, the State was required to prove that Maples was aware that his conduct would inflict intense pain in the mind or body of A.D. for the purpose of punishment, or that Maples was aware that his conduct was pitiless or designed to inflict a high degree of pain, or exhibited utter indifference to, or enjoyment of the suffering of, A.D. The mens

13

rea element of this crime requires it to have been done while being aware of the nature of the conduct and for it not to have been done by accident.

When discussing the slapping incident, Maples said that he did not know that he had hit A.D. hard enough to cause bruising and that he felt that he had just "papped" her on the head. From this slapping incident, Maples learned that very little force was required to injure the child and to cause bruising of her body. The material fact that was in dispute in this case was absence of mistake. The logical connection between the December slapping incident and the absence of mistake is that Maples was aware what type of conduct would cause bruising to A.D. and was aware of the fragility of a child's body, so when he choked her on January 19th and completed the actions on January 20th, he was not mistaken on what type of force was necessary to inflict the harm. Because the slapping incident has a logical connection to proving the material fact of absence of mistake, it was relevant.

The final prong of the analysis focuses on whether the probative value outweighs the potential for undue prejudice. Nearly all of the State's evidence is prejudicial towards the defendant, but the evidence is only unduly prejudicial when it brings about the wrong result at trial. See *State v. Garcia*, 285 Kan. 1, 18, 169 P.3d 1069 (2007). The court issues limiting instructions for K.S.A. 60-455 evidence to avoid the undue prejudice. See *Barber*, 302 Kan. at 376. It is presumed that the jury will follow the limiting instructions. 302 Kan. 377-78. The potential for producing undue prejudice should be found when the evidence is of such a nature that the presumption of the jurors following the law was overcome. See *State v. Becker*, 290 Kan. 842, 856, 235 P.3d 424 (2010). This court reviews the district court's balancing of the probative value against the potential for undue prejudice for abuse of discretion. *Torres*, 294 Kan. at 139-40.

Here, the district court limited the use of the slapping incident to the proof of the absence of a mistake. The court ensured that the evidence would not be used for the

14

improper propensity purposes. Therefore, the potential for undue prejudice was limited in this case. Further, due to Maples being alone with A.D. each time she was injured and due to A.D. being too young to tell what had occurred, this absence of mistake is very probative of whether the harm to A.D. was done knowingly or in the absence of a mistake. Therefore, the district court did not abuse its discretion in finding the evidence is highly probative and the potential for undue prejudice is minimal, and the court did not err in finding that the evidence of the December slapping was admissible under K.S.A. 60-455.

*Intent*

The district court allowed the evidence of the bathtub incident and the rocking giraffe incident into evidence to show intent. Intent for K.S.A. 60-455 purposes refers to the broader sense of the overall guilty mind and may be introduced to show an action was intentional instead of accidental. *State v. Prine*, 287 Kan. 713, 726, 200 P.3d 1 (2009). See, e.g., *State v. Nunn*, 244 Kan. 207, 212, 768 P.2d 268 (1989) (evidence of prior sexual misconduct against children not admissible to prove intent because intent is not in issue); see also *State v. Synoracki*, 253 Kan. 59, 71-74, 853 P.2d 24 (1993) (prior crime admissible to prove intent in murder trial; defendant argued self-defense).

Again, Maples acknowledges that intent was a material fact that was in dispute in light of the prosecution's theory that A.D.'s death was not an accident but instead occurred as a result of the abuse he inflicted on her. But he claims that the bathtub incident and the rocking giraffe incident were irrelevant to prove intent. He asserts that these incidents did nothing to establish that the events on January 19th and January 20th were not an accident because these accidents do not create a logical connection between the bathtub incident and the rocking giraffe incident and the intent to harm. He claims that the evidence shows that the bathtub incident and the rocking giraffe incident were mere accidents and do not demonstrate an intent to harm. He further claims that the

15

evidence was used solely to establish his propensity to commit child abuse, which is an improper use of the evidence. Because Maples has acknowledged that the first prong of the K.S.A. 60-455 analysis is met, we will review the second and third prong of the analysis.

Maples acknowledged that intent was a material fact in dispute, so we will address the relevancy portion of the second prong. Here, Maples is not arguing that he had nothing to do with the death of A.D. or that he did not strangle A.D., but instead, he is arguing that the child's death was an accident and that he did not knowingly injure the child on January 20th and that he did not knowingly cause the requisite harm on January 19th. The prior acts relating to the bathtub and the giraffe show that A.D. was frequently injured when she was left alone with Maples. While his rendition of the story seems to show that the bathtub incident and the rocking giraffe incident were accidents, the other evidence presented on the issues shows that it is entirely reasonable that Maples took action to harm A.D. on each occasion. The pattern of abuse establishes the intent to harm A.D. on January 20th. Therefore, there is a logical connection between the bathtub incident and the rocking giraffe incident and the general intent to harm.

The third prong also favors the admission of the evidence. The district court properly gave a limiting instruction for the jury to consider the evidence of the giraffe incident and the bathtub incident only to establish the intent to commit the crimes. Therefore, the prejudicial impact was limited. The probative value is high in light of the lack of other evidence of the interactions in question. Therefore, the court did not err in finding the evidence was admissible.

*Harmless Error*

Even if we were to find that any of the K.S.A. 60-455 evidence was erroneously admitted into evidence, the error would not amount to a reversible error as there is no reasonable probability that the evidence affected the outcome of the case.

Appellate courts review the improper admission of evidence under K.S.A. 60-455 for harmless error. *State v. Longstaff*, 296 Kan. 884, 895, 299 P.3d 268 (2013). Error is harmless if there is no "reasonable probability that the error will or did affect the outcome of the trial in light of the entire record." 296 Kan. at 895. An error affects the outcome of trial if it creates undue or unfair prejudice. The burden of demonstrating harmlessness is on the party benefiting from the error. 296 Kan. at 895.

Maples was convicted of abuse of a child for the actions he took on January 19, 2015. K.S.A. 2014 Supp. 21-5602 defines abuse of a child as "knowingly . . . [t]orturing or cruelly beating any child under the age of 18 years; . . . shaking any child under the age of 18 years which results in great bodily harm to the child; or . . . inflicting cruel and inhumane corporal punishment upon any child under the age of 18 years."

The jury instruction for abuse of a child required the jury to find Maples knowingly tortured or cruelly beat A.D. on or between January 19 and January 20. The instructions defined torture as inflicting intense pain to the body or mind for purpose of punishment. The instructions defined cruelly as pitiless or designed to inflict a high degree of pain, utter indifference to, or enjoyment of the suffering of another.

Therefore, the issue is whether the erroneous admission of evidence unfairly prejudiced the jury into finding each element of the crime. We find that the admission of the evidence did not unfairly prejudice the jury.

17

The record shows that Maples was found not guilty for felony murder, so the evidence was unsuccessful in establishing the requisite intent on January 20, 2015. As far as the conviction for child abuse, Maples admitted that he placed his hand near the throat of A.D. on January 19, 2015, and shook her because she was crying. He said that he did this to correct her actions. The medical professionals testified that the small cuts around A.D.'s neck were consistent with someone's fingernails digging into her skin while grasping her throat and that the bruising was consistent with strangulation. The evidence also showed that A.D. had bruising on her back and legs that occurred prior to the day of her death. All of this would easily allow a reasonable fact-finder to find Maples guilty of abuse of the child even if the K.S.A. 60-455 evidence was not admitted. Therefore, there is no real possibility that the admission of the evidence had had any impact on the verdict.

PROPER SENTENCING

Maples asserts that his sentence is illegal because his criminal history is improperly scored an A in light of the 2016 amendment to K.S.A. 21-6810(d)(3)(B). Maples claims K.S.A. 2016 Supp. 21-6810(d)(3)(B), which requires any juvenile conviction that is not a severity level 1 through 4 person felony to decay if the conviction of the current crime is committed after the defendant reached 25 years of age, is to be applied retroactively. Maples asserts that because his three prior juvenile person felonies were not level 1 through 4 and he was older than 25 when he was convicted of abuse of a child, his criminal history score should have been reduced from an A to a B and his sentence reduced accordingly.

The State cites *Parker v. State*, No. 115,267, 2017 WL 947821, at *1 (Kan. App. 2017) (unpublished opinion), *rev. granted* 306 Kan. 1319 (2017), and *State v. Villa*, No. 115,595, 2017 WL 3207087, at *2 (Kan. App. 2017) (unpublished opinion), *rev. granted*

18

December 20, 2017, as persuasive authority showing the 2016 amendment to K.S.A. 21-6810(d)(3)(B) is not to be applied retroactively.

Maples filed a reply brief asserting that *Parker* and *Villa* were wrongly decided because they failed to address the parallel nature of the retroactivity clauses in K.S.A. 2016 Supp. 21-6810(e) and K.S.A. 2016 Supp. 21-6811(j). Maples then asks this court to disagree with *Parker* and *Villa* and find the 2016 amendment to K.S.A. 21-6810(d)(3)(B) applies retroactively.

The interpretation of statutory language and the determination of whether a sentence is legal are questions of law that we review de novo. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). An illegal sentence is a sentence imposed by a court without jurisdiction; a sentence that does not conform to the statutory provision, either in the character or the term of authorized punishment; or a sentence that is ambiguous with respect to the time and manner in which it is to be served. *State v. Gray*, 303 Kan. 1011, 1014, 368 P.3d 1113 (2016). An illegal sentence may be corrected at any time, even if it is raised for the first time on appeal. *State v. Dickey*, 305 Kan. 217, 220, 380 P.3d 230 (2016). Here, the challenge is that the sentence does not conform to the term of the authorized punishment, so this issue is properly before us.

The issue that we must decide is whether Maples' juvenile crimes decayed. If Maples' juvenile crimes decayed, his criminal history score would not be an A and his sentence would be illegal, because a juvenile offense that decays cannot be considered in determining a defendant's criminal history score. K.S.A. 2016 Supp. 21-6803(e); *State v. Smith*, 49 Kan. App. 2d 88, 90, 304 P.3d 359 (2013).

"[T]he crime and penalty in existence at the time of the offense are controlling unless the Legislature has given retroactive effect to any statutory changes made subsequent to the time of the commission of the crime." *State v. Van Cleave*, 239 Kan.

19

117, 122, 716 P.2d 580 (1986). A statute operates prospectively unless (1) the statutory language clearly indicates the Legislature intended the statute to operate retroactively; or (2) the change is procedural or remedial in nature and does not prejudicially affect the substantive rights of the parties. See *State v. Bernhardt*, 304 Kan. 460, 479, 372 P.3d 1161 (2016).

Maples committed the current crime in January 2015; thus, the 2014 supplement applies. K.S.A. 2014 Supp. 21-6810(d)(4) provided:

> "Except as otherwise provided, a juvenile adjudication will decay if the current crime of conviction is committed after the offender reaches the age of 25, and the juvenile adjudication is for an offense . . . which would be a nondrug severity level 6, 7, 8, 9 or 10 . . . felony . . . if committed by an adult."

K.S.A. 2014 Supp. 21-6810(d)(3)(B) provided: "There will be no decay factor applicable for . . . a juvenile adjudication for an offense which would constitute a person felony if committed by an adult."

Maples has two juvenile adjudications for terroristic threat and one adjudication for burglary of a dwelling, each of which would have constituted a person felony if committed by an adult. See K.S.A. 2014 Supp. 21-5415; K.S.A. 2014 Supp. 21-5807. Terroristic threat would be classified as a severity level 9 person felony when committed by an adult, and burglary of a dwelling would be classified as a severity level 7 person felony when committed by an adult. K.S.A. 2014 Supp. 21-5415; K.S.A. 2014 Supp. 21-5807. Therefore, based on K.S.A. 2014 Supp. 21-6810(d)(3)(B), Maples' juvenile crimes would not have been decayed and his original score of A was proper at the time of sentencing.

The statute in effect at the time of Maples' sentencing included the Legislature's 2015 amendment to K.S.A. 21-6810(d)(3)(B), which was created in response to *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), *overruled by State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016), to clarify that presentencing guideline offenses would be measured by comparable offenses at the time of the current crime. L. 2015, ch. 5, § 1. In addition to this clarification, the 2015 amendment to K.S.A. 21-6810 also included the Legislature's addition of subsection (e), which provided that "[t]he amendments made to this section by this act are procedural in nature and shall be construed and applied retroactively." L. 2015, ch. 5, § 1. This retroactivity provision "was essential in House Bill 2053 due to the significant number of postconviction challenges to criminal sentences the courts would face if no retroactivity provision clarified that the provision was procedural in nature." *Villa*, 2017 WL 3207087, at \*3.

Since the time of Maples' sentence, K.S.A. 21-6810 has been modified two times. In 2016, the Legislature amended K.S.A. 21-6810(d)(3)(B) to allow some juvenile convictions that would have been person felonies if committed by an adult to decay. L. 2016, ch. 97, § 1. K.S.A. 2016 Supp. 21-6810(d)(3)(B) was amended to say:

> "There will be no decay factor applicable for . . . a juvenile adjudication for an offense which would constitute a nondrug severity level 1 through 4 person felony if committed by an adult. Prior juvenile adjudications for offenses that were committed before July 1, 1993, shall be scored as a person or nonperson crime using a comparable offense under the Kansas criminal code in effect on the date the current crime of conviction was committed."

In making this change, the Legislature did not amend subsection (e), which still provided that "[t]he amendments made to this section by this act are procedural in nature and shall be construed and applied retroactively." L. 2016, ch. 97, § 1.

In 2017, the Legislature again amended K.S.A. 21-6810. L. 2017, ch. 92, § 5. In this amendment, the Legislature amended subsection (e) to say "[t]he amendments made to this section by section 1 of chapter 5 of the 2015 Session Laws of Kansas are procedural in nature and shall be construed and applied retroactively." L. 2017, ch. 92, § 5.

Because Maples' juvenile convictions for terroristic threat and burglary of a dwelling were respectively severity level 9 and 7 person felonies, and he was over the age of 25 when he committed the current offense, his juvenile convictions for terroristic threat and burglary of a dwelling would decay if K.S.A. 2016 Supp. 21-6810(d)(3)(B) were to be retroactively applied. So we must determine whether K.S.A. 2016 Supp. 21-6810(d)(3)(B) is to be applied retroactively in light of the Legislature's inclusion of the subsection (e) retroactivity provision.

Maples argues that the Legislature showed that it intended for the 2016 amendment to be applied retroactively because it declined to remove or amend the wording of the retroactivity provision. In support of his argument, Maples cites to K.S.A. 2016 Supp. 21-6811(j), which provides "[t]he amendments made to this section by chapter 5 of the 2015 Session Laws of Kansas are procedural in nature and shall be construed and applied retroactively" as showing the Legislature knew how to limit the retroactivity provision when they intended such a limitation, but that no such limiting language was used in K.S.A. 2016 Supp. 21-6810(e). Maples claims that the failure to include the limiting language was an intent by the Legislature to make the retroactivity provision applicable to the entire statute of K.S.A. 21-6810.

Unfortunately for Maples, the Legislature answered the intent question when it amended K.S.A. 21-6810(e) in 2017. In its 2017 amendment to K.S.A. 21-6810, the Legislature clearly indicated that the retroactively provision of subsection (e) should be applied only to the 2015 amendment. L. 2017, ch. 92, § 5. There is no language in K.S.A.

22

2017 Supp. 21-6810 that would indicate the Legislature intended for the new decay provision to be retroactive despite the different language that was used in K.S.A. 2016 Supp. 21-6810(e) and K.S.A. 2016 Supp. 21-6811(j).

This court has previously determined that the plain language of the 2015 amendment indicated that the retroactivity provision was to be applied only to the 2015 amendment. *Villa*, 2017 WL 3207087, at *4-5. The 2015 amendment made subsection (e), the retroactivity provision, applicable to "this act." K.S.A. 2015 Supp. 21-6810(e). In *Villa*, this court noted, "If the legislature had intended for subsection (e) to apply to all further amendments to the statute, it could have stated that intent; the legislature frequently applies a rule to a statute 'and all amendments thereto.'" 2017 WL 3207087, at *4. In *Parker*, this court noted that the Legislature had included specific express language when it made prior substantive changes to a sentence but that the language used in K.S.A. 2016 Supp. 21-6810(e) was broad and imprecise, so the Legislature did not intend to make the 2016 amendment retroactive. 2017 WL 947821, at *4.

Furthermore, the new decay provisions are substantive in nature, so they would not become retroactive under the procedural prong of the analysis. "'Substantive law is that which declares what acts are crimes and prescribes the punishment therefor; whereas procedural law is that which provides or regulates the steps by which one who violates a criminal statute is punished.' [Citation omitted.]" *Tonge v. Werholtz*, 279 Kan. 481, 487, 109 P.3d 1140 (2005). The 2016 amendment is substantive because if applied, it would change the length of a defendant's sentence, i.e., it proscribes the punishment for the offense. See *State v. Freeman*, 249 Kan. 768, 770-72, 822 P.2d 68 (1991) (holding a statute allowing the State a 30-day grace period to file a motion to revoke probation was substantive because, if applied, it would have changed the length of the defendant's punishment). If applied to Maples, the 2016 amendment would decrease his sentence thereby impacting his substantive rights.

23

Because the 2016 amendment is substantive in nature, and the Legislature clearly indicated that it did not intend for this decay amendment to be retroactive, the law in effect at the time of Maples' sentencing should be applied to the calculation of his criminal history score. Maples' criminal history score of A was correct under the 2015 law, so the district court did not err in sentencing Maples based on a criminal history score of A.

Affirmed.